## COMMISSIONER OF INTERNAL REVENUE *v.* FLOWERS.

No. 145.   Argued December 11, 12, 1945.—Decided January 2, 1946.

Mr. J. Louis Monarch, with whom Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key and Harry Baum were on the brief, for petitioner.

Mr. James N. Ogden for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This case presents a problem as to the meaning and application of the provision of § 23 (a) (1) (A) of the Internal Revenue Code [1] allowing a deduction for income

---

[1] 26 U. S. C. § 23 (a) (1) (A), as amended, 56 Stat. 819.

"§ 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.—

"(1) Trade or Business Expenses.—

"(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

tax purposes of "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business."

The taxpayer, a lawyer, has resided with his family in Jackson, Mississippi, since 1903. There he has paid taxes, voted, schooled his children and established social and religious connections. He built a house in Jackson nearly thirty years ago and at all times has maintained it for himself and his family. He has been connected with several law firms in Jackson, one of which he formed and which has borne his name since 1922.

In 1906 the taxpayer began to represent the predecessor of the Gulf, Mobile & Ohio Railroad, his present employer. He acted as trial counsel for the railroad throughout Mississippi. From 1918 until 1927 he acted as special counsel for the railroad in Mississippi. He was elected general solicitor in 1927 and continued to be elected to that position each year until 1930, when he was elected general counsel. Thereafter he was annually elected general counsel until September, 1940, when the properties of the predecessor company and another railroad were merged and he was elected vice president and general counsel of the newly formed Gulf, Mobile & Ohio Railroad.

The main office of the Gulf, Mobile & Ohio Railroad is in Mobile, Alabama, as was also the main office of its predecessor. When offered the position of general solicitor in 1927, the taxpayer was unwilling to accept it if it required him to move from Jackson to Mobile. He had established himself in Jackson both professionally and personally and was not desirous of moving away. As a result, an arrangement was made between him and the railroad whereby he could accept the position and continue to reside in Jackson on condition that he pay his traveling expenses between Mobile and Jackson and pay his living expenses in both places. This arrangement permitted the taxpayer to determine for himself the amount

of time he would spend in each of the two cities and was in effect during 1939 and 1940, the taxable years in question.

The railroad company provided an office for the taxpayer in Mobile but not in Jackson. When he worked in Jackson his law firm provided him with office space, although he no longer participated in the firm's business or shared in its profits. He used his own office furniture and fixtures at this office. The railroad, however, furnished telephone service and a typewriter and desk for his secretary. It also paid the secretary's expenses while in Jackson. Most of the legal business of the railroad was centered in or conducted from Jackson, but this business was handled by local counsel for the railroad. The taxpayer's participation was advisory only and was no different from his participation in the railroad's legal business in other areas.

The taxpayer's principal post of business was at the main office in Mobile. However, during the taxable years of 1939 and 1940, he devoted nearly all of his time to matters relating to the merger of the railroads. Since it was left to him where he would do his work, he spent most of his time in Jackson during this period. In connection with the merger, one of the companies was involved in certain litigation in the federal court in Jackson and the taxpayer participated in that litigation.

During 1939 he spent 203 days in Jackson and 66 in Mobile, making 33 trips between the two cities. During 1940 he spent 168 days in Jackson and 102 in Mobile, making 40 trips between the two cities. The railroad paid all of his traveling expenses when he went on business trips to points other than Jackson or Mobile. But it paid none of his expenses in traveling between these two points or while he was at either of them.

The taxpayer deducted $900 in his 1939 income tax return and $1,620 in his 1940 return as traveling expenses

incurred in making trips from Jackson to Mobile and as expenditures for meals and hotel accommodations while in Mobile.[2] The Commissioner disallowed the deductions, which action was sustained by the Tax Court. But the Fifth Circuit Court of Appeals reversed the Tax Court's judgment, 148 F. 2d 163, and we granted certiorari because of a conflict between the decision below and that reached by the Fourth Circuit Court of Appeals in *Barnhill* v. *Commissioner*, 148 F. 2d 913.

The portion of § 23 (a) (1) (A) authorizing the deduction of "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business" is one of the specific examples given by Congress in that section of "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." It is to be contrasted with the provision of § 24 (a) (1) of the Internal Revenue Code disallowing any deductions for "personal, living, or family expenses." And it is to be read in light of the interpretation given it by § 19.23 (a)–2 of Treasury Regulations 103, promulgated under the Internal Revenue Code. This interpretation, which is precisely the same as that given to identical traveling expense deductions authorized by prior and successive Revenue Acts,[3] is deemed to possess implied legislative approval and to have the effect of law. *Helvering* v. *Winmill*, 305 U. S. 79; *Boehm* v. *Commissioner*, 326 U. S. 287. In pertinent part, this interpretation states that "Traveling expenses, as ordi-

---

[2] No claim for deduction was made by the taxpayer for the amounts spent in traveling from Mobile to Jackson. He also took trips during the taxable years to Washington, New York, New Orleans, Baton Rouge, Memphis and Jackson (Tenn.), which were apparently in the nature of business trips for which the taxpayer presumably was reimbursed by the railroad. No claim was made in regard to them.

[3] Article 23 (a)–2 of Regulations 101, 94, 86; Article 122 of Regulations 77 and 74; Article 102 of Regulations 69 and 65; Article 101 (a) of Regulations 62.

narily understood, include railroad fares and meals and lodging. If the trip is undertaken for other than business purposes, the railroad fares are personal expenses and the meals and lodging are living expenses. If the trip is solely on business, the reasonable and necessary traveling expenses, including railroad fares, meals, and lodging, are business expenses. . . . Only such expenses as are reasonable and necessary in the conduct of the business and directly attributable to it may be deducted. . . . Commuters' fares are not considered as business expenses and are not deductible."

Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23 (a) (1) (A):

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

Whether particular expenditures fulfill these three conditions so as to entitle a taxpayer to a deduction is purely a question of fact in most instances. See *Commissioner* v. *Heininger,* 320 U. S. 467, 475. And the Tax Court's inferences and conclusions on such a factual matter, under established principles, should not be disturbed by an appellate court. *Commissioner* v. *Scottish American Co.,* 323 U. S. 119; *Dobson* v. *Commissioner,* 320 U. S. 489.

In this instance, the Tax Court without detailed elaboration concluded that "The situation presented in this

proceeding is, in principle, no different from that in which a taxpayer's place of employment is in one city and for reasons satisfactory to himself he resides in another." It accordingly disallowed the deductions on the ground that they represent living and personal expenses rather than traveling expenses incurred while away from home in the pursuit of business. The court below accepted the Tax Court's findings of fact but reversed its judgment on the basis that it had improperly construed the word "home" as used in the second condition precedent to a traveling expense deduction under § 23 (a) (1) (A). The Tax Court, it was said, erroneously construed the word to mean the post, station or place of business where the taxpayer was employed—in this instance, Mobile—and thus erred in concluding that the expenditures in issue were not incurred "while away from home." The court below felt that the word was to be given no such "unusual" or "extraordinary" meaning in this statute, that it simply meant "that place where one in fact resides" or "the principal place of abode of one who has the intention to live there permanently." 148 F. 2d at 164. Since the taxpayer here admittedly had his home, as thus defined, in Jackson and since the expenses were incurred while he was away from Jackson, the court below held that the deduction was permissible.

The meaning of the word "home" in § 23 (a) (1) (A) with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation. 4 Mertens, Law of Federal Income Taxation (1942) § 25.82. The Tax Court [4] and the administrative

---

[4] *Bixler* v. *Commissioner,* 5 B. T. A. 1181; *Griesemer* v. *Commissioner,* 10 B. T. A. 386; *Brown* v. *Commissioner,* 13 B. T. A. 832; *Duncan* v. *Commissioner,* 17 B. T. A. 1088; *Peters* v. *Commissioner,* 19 B. T. A. 901; *Lindsay* v. *Commissioner,* 34 B. T. A. 840; *Powell* v. *Commissioner,* 34 B. T. A. 655; *Tracy* v. *Commissioner,* 39 B. T. A.

rulings [5] have consistently defined it as the equivalent of the taxpayer's place of business. See *Barnhill* v. *Commissioner, supra* (C. C. A. 4). On the other hand, the decision below and *Wallace* v. *Commissioner,* 144 F. 2d 407 (C. C. A. 9), have flatly rejected that view and have confined the term to the taxpayer's actual residence. See also *Coburn* v. *Commissioner,* 138 F. 2d 763 (C. C. A. 2).

We deem it unnecessary here to enter into or to decide this conflict. The Tax Court's opinion, as we read it, was grounded neither solely nor primarily upon that agency's conception of the word "home." Its discussion was directed mainly toward the relation of the expenditures to the railroad's business, a relationship required by the third condition of the deduction. Thus even if the Tax Court's definition of the word "home" was implicit in its decision and even if that definition was erroneous, its judgment must be sustained here if it properly concluded that the necessary relationship between the expenditures and the railroad's business was lacking. Failure to satisfy any one of the three conditions destroys the traveling expense deduction.

Turning our attention to the third condition, this case is disposed of quickly. There is no claim that the Tax Court misconstrued this condition or used improper standards in applying it. And it is readily apparent from the

---

578; *Priddy* v. *Commissioner,* 43 B. T. A. 18; *Schurer* v. *Commissioner,* 3 T. C. 544; *Gustafson* v. *Commissioner,* 3 T. C. 998.

[5] Section 19.23 (a)–2 of Treasury Regulations 103 does not attempt to define the word "home" although the Commissioner argues that the statement therein contained to the effect that commuters' fares are not business expenses and are not deductible "necessarily rests on the premise that 'home' for tax purposes is at the locality of the taxpayer's business headquarters." Other administrative rulings have been more explicit in treating the statutory home as the abode at the taxpayer's regular post of duty. See, e. g., O. D. 1021, 5 Cum. Bull. 174 (1921); I. T. 1264, I–1 Cum. Bull. 122 (1922); I. T. 3314, 1939–2 Cum. Bull. 152; G. C. M. 23672, 1943 Cum. Bull. 66.

facts that its inferences were supported by evidence and that its conclusion that the expenditures in issue were non-deductible living and personal expenses was fully justified.

The facts demonstrate clearly that the expenses were not incurred in the pursuit of the business of the taxpayer's employer, the railroad. Jackson was his regular home. Had his post of duty been in that city the cost of maintaining his home there and of commuting or driving to work concededly would be non-deductible living and personal expenses lacking the necessary direct relation to the prosecution of the business. The character of such expenses is unaltered by the circumstance that the taxpayer's post of duty was in Mobile, thereby increasing the costs of transportation, food and lodging. Whether he maintained one abode or two, whether he traveled three blocks or three hundred miles to work, the nature of these expenditures remained the same.

The added costs in issue, moreover, were as unnecessary and inappropriate to the development of the railroad's business as were his personal and living costs in Jackson. They were incurred solely as the result of the taxpayer's desire to maintain a home in Jackson while working in Mobile, a factor irrelevant to the maintenance and prosecution of the railroad's legal business. The railroad did not require him to travel on business from Jackson to Mobile or to maintain living quarters in both cities. Nor did it compel him, save in one instance, to perform tasks for it in Jackson. It simply asked him to be at his principal post in Mobile as business demanded and as his personal convenience was served, allowing him to divide his business time between Mobile and Jackson as he saw fit. Except for the federal court litigation, all of the taxpayer's work in Jackson would normally have been performed in the headquarters at Mobile. The fact that he traveled frequently between the two cities and incurred

extra living expenses in Mobile, while doing much of his work in Jackson, was occasioned solely by his personal propensities. The railroad gained nothing from this arrangement except the personal satisfaction of the taxpayer.

Travel expenses in pursuit of business within the meaning of § 23 (a) (1) (A) could arise only when the railroad's business forced the taxpayer to travel and to live temporarily at some place other than Mobile, thereby advancing the interests of the railroad. Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors. Such was not the case here.

It follows that the court below erred in reversing the judgment of the Tax Court.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, dissenting.

I think the judgment of the Court of Appeals should be affirmed. When Congress used the word "home" in § 23 of the Code, I do not believe it meant "business headquarters." And in my opinion this case presents no other question.

Congress allowed the deduction for "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business." Treasury Regulations 103, § 19.23 (a)–1, are to the same effect, with the word "solely" added after "home." Section 19.23 (a)–2 also provides: "Commuters' fares are not considered as business expenses and are not deductible." By this decision, the latter regulation is

allowed, in effect, to swallow up the deduction for many situations where the regulation has no fit application.

Respondent's home was in Jackson, Mississippi, in every sense, unless for applying § 23. There he maintained his family, with his personal, political and religious connections; schooled his children; paid taxes, voted, and resided over many years. There too he kept hold upon his place as a lawyer, though not substantially active in practice otherwise than to perform his work as general counsel for the railroad. This required his presence in Mobile, Alabama, for roughly a third of his time. The remainder he spent in Jackson at the same work, except for the time he was required to travel to points other than Mobile.

The company's principal offices were there, including one set aside for respondent's use. But the bulk of its trackage was in Mississippi and much of its legal work, with which he was concerned, was done there. His choice to keep his home in Jackson must have been affected by this fact, although it was motivated chiefly by more purely personal considerations. It is doubtful indeed, though perhaps not material, whether by not moving to Mobile he did not save the Government from larger deductions on account of traveling expense than those he claimed.

There is no question therefore but that respondent's home was in Jackson for every purpose, unless for the single one of applying § 23. Nor is it in doubt that he traveled from Jackson to Mobile and return, as he claimed, or that he spent the sums deducted for that purpose, including meals and lodging. Neither is it denied, as matter of fact, that his sole reason for going to Mobile was to perform his work as it required his presence or that he returned to his home in Jackson periodically when his duties no longer required him to be in Mobile.

I think this makes a case squarely within the statute and the regulations. But the Tax Court ruled that the claimed deductions were "personal, living, or family ex-

penses." Because the taxpayer elected to keep his home in Jackson, rather than move to Mobile, and because his employer did not undertake to pay these expenses, it viewed the case as being the same as if he had moved to Mobile. In that event, it said, he would have been required to bear the expenses of his own meals and lodging. This is obvious, even though the "as if" conclusion does not follow. The court went on, however, to give the further reason for it: "The situation . . . is, in principle, no different from that in which a taxpayer's place of employment is in one city and for reasons satisfactory to himself he resides in another." It seems questionable whether, in so ruling, the Tax Court has not confused the taxpayer's principal place of employment with his employer's. For on the facts Jackson rather than Mobile would seem more appropriately to be found *his* business headquarters. But, regardless of that, the authorities cited [1] and the Government's supporting argument show that the case was regarded as in essence the commuter's, excepted by the regulations.

Apart from this ruling, the Tax Court made no finding, of fact or law, that respondent was not engaged "in the pursuit of a trade or business"; that he was not "away

---

[1] *Frank H. Sullivan,* 1 B. T. A. 93; *Mort L. Bixler,* 5 B. T. A. 1181; *Jennie A. Peters,* 19 B. T. A. 901; *Walter M. Priddy,* 43 B. T. A. 18.

The *Sullivan* case illustrates the typical commuter situation. The *Peters* case illustrates the extension of that ruling to greater distances and irregular travel.

Recent decisions, however, where the traveling distance is great, appear to go on the theory, presented in the instant case, that the word "home" within the meaning of § 23 (a) (1) means "principal place of business." See Tax Court Memorandum Opinion, Dec. 13,853 (M), 1 C. C. H. Tax Serv. 1945, p. 1268. Thus, Mertens says that the disallowance of traveling expenses to one's place of business "is based primarily on the requirement that the traveling expenses include only amounts expended 'while away from home.'" 4 Mertens, Law of Federal Income Taxation, 478.

from home"; that the expenses were not "business expenses" or "business traveling expenses"; or that they were not "ordinary and necessary." Yet by a merry-go-round argument,[2] which always comes back to rest on the idea that "home" means "business headquarters," the Government seeks to inject such issues and findings, including a *Dobson* (320 U. S. 489) contention, into the Tax Court's determination. I think there was only one issue, a question of law requiring construction of the statute as to the meaning of the word "home" and, if that is resolved against the Government, the Tax Court's judgment has no other foundation on which to stand. Every other contention falls when this one does. All stand if it is valid.

I agree with the Court of Appeals that if Congress had meant "business headquarters," and not "home," it would have said "business headquarters." When it used "home" instead, I think it meant home in everyday parlance, not in some twisted special meaning of "tax home" or "tax headquarters."[3] I find no purpose stated or implied in the Act, the regulations or the legislative history to support such a distortion or to use § 23 as a lever to force people to move their homes to the locality where their

---

[2] Thus, the assertion that the deductions were "not even 'business' expenses" is brought back to the meaning of "home" by the given reason that "the maintenance of more than one dwelling place manifestly is not essential to the prosecution of a business." And this, in turn, completes the circle by resting on the conclusion that the taxpayer had two dwelling places, one in Mobile (presumably the hotel or hotels where he stopped) "where he resided during the periods the living expenses in question were incurred," the other in Jackson "where he resided during other periods." Likewise, the conclusion that the deductions were not "ordinary and necessary expenses," see note 8, depends on the view that Jackson was not "home" but Mobile was. So with the assertion that the "Mobile living expenses" were not "business traveling expenses."

[3] Cf. *Cox* v. *Collector*, 12 Wall. 204; *Addison* v. *Holly Hill Co.*, 322 U. S. 607, 617–618.

employer's chief business headquarters may be, although their own work may be done as well in major part at home. The only stated purpose, and it is clearly stated, not in words of art, is to relieve the tax burden when one is away from home on business.

The Government relies on administrative construction, by the Commissioner and the Tax Court, and says that unless this is accepted the Act creates tax inequality. If so, it is inequality created by Congress, and it is not for the Commissioner or the Tax Court, by administrative reconstruction, to rewrite what Congress has written or to correct its views of equality. Moreover, in my opinion, the inequity, if any, comes not from the statute or the regulation but from the construction which identifies petitioner with a commuter.

That word too has limitations unless it also is made a tool for rewriting the Act. The ordinary, usual connotation, cf. 21 I. C. C. 428; *Pennsylvania R. Co.* v. *Towers,* 245 U. S. 6, 12, does not include irregular, although frequent journeys of 350 miles, requiring Pullman accommodations and some twelve to fifteen hours, one way.

Congress gave the deduction for traveling away from home on business. The commuter's case, rightly confined, does not fall in this class. One who lives in an adjacent suburb or city and by usual modes of commutation can work within a distance permitting the daily journey and return, with time for the day's work and a period at home, clearly can be excluded from the deduction on the basis of the section's terms equally with its obvious purpose. But that is not true if "commuter" is to swallow up the deduction by the same sort of construction which makes "home" mean "business headquarters" of one's employer. If the line may be extended somewhat to cover doubtful cases, it need not be lengthened to infinity or to cover cases as far removed from the prevailing connotation of

commuter as this one. Including it pushes "commuting" too far, even for these times of rapid transit.[4]

Administrative construction should have some bounds. It exceeds what are legitimate when it reconstructs the statute to nullify or contradict the plain meaning of non-technical terms not artfully employed. Moreover, in this case the matter has been held in suspension by litigation with varying results[5] and apparent qualification by the Tax Court consequent upon some of the decisions.[6]

By construing "home" as "business headquarters"; by reading "temporarily" as "very temporarily" into § 23; by bringing down "ordinary and necessary" from its first sentence into its second;[7] by finding "inequity" where Congress has said none exists; by construing "commuter" to cover long-distance, irregular travel; and by conjuring

---

[4] Conceivably men soon may live in Florida or California and fly daily to work in New York and back. Possibly they will be regarded as commuters when that day comes. But, if so, that is not this case and, in any event, neither situation was comprehended by Congress when § 23 was enacted.

[5] See *Wallace* v. *Commissioner,* 144 F. 2d 407 (C. C. A. 9); *Coburn* v. *Commissioner,* 138 F. 2d 763 (C. C. A. 2); and the decision now in review, 148 F. 2d 163 (C. C. A. 5), with which compare *Barnhill* v. *Commissioner* and *Winborne* v. *Commissioner,* 148 F. 2d 913 (C. C. A. 4).

[6] See *Harry F. Schurer,* 3 T. C. 544; *Charles G. Gustafson,* 3 T. C. 998; *Mortimer M. Mahony,* C. C. H. Tax Ct. Serv., Dec. 14,508 (M), April 10, 1945; *Charles J. McLennan,* C. C. H. Tax Ct. Serv., Dec. 14,644 (M), June 25, 1945; *Robert S. Shelley,* C. C. H. Tax Ct. Serv., Dec. 14,642 (M), June 25, 1945.

[7] The language is: "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; . . ." § 23 (a) (1) (A), Internal Revenue Code.

from the "statutory setting" a meaning at odds with the plain wording of the clause, the Government makes over understandable ordinary English into highly technical tax jargon. There is enough of this in the tax laws inescapably, without adding more in the absence of either compulsion or authority. The arm of the tax-gatherer reaches far. In my judgment it should not go the length of this case. Congress has revised § 23 once to overcome niggardly construction.[8] It should not have to do so again.

---

[8] The Treasury Regulations in force in 1920 allowed deduction of only the excess of the cost of meals and lodging away from home over the cost at home; and under earlier regulations none of this expense was allowed. Congress inserted the words "all" and "entire" in the 1921 Act to overcome this ruling.