**James O. HENDERSON, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 96–70164.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1997.

Decided April 29, 1998.

---

John Hinton, Boise, Idaho, for the petitioner-appellant.

Gilbert S. Rothenberg, Assistant Attorney General, Washington, DC, and Tamara S. Schottenstein, Assistant Attorney General, Washington, DC, for the respondent-appellee.

Before: D. W. NELSON, WIGGINS, and KOZINSKI, Circuit Judges.

Opinion by Judge WIGGINS; Dissent by Judge KOZINSKI.

WIGGINS, Circuit Judge:

We must decide whether a taxpayer may claim Boise, Idaho as his "tax home" for the 1990 tax year even though virtually all of his work that year was for a traveling ice show. James Henderson claimed deductions under Internal Revenue Code § 162(a)(2) for living expenses incurred "away from home" while on the tours. The Commissioner disallowed the deductions, concluding that Henderson had no legal tax home for purposes of § 162(a)(2) because he lacked the requisite business reasons for living in Boise between ice show tours. As a result of the disallowance, Henderson had a deficiency in his 1990 federal income tax of $1,791. The Tax Court upheld the Commissioner's decision. We have jurisdiction under 26 U.S.C. § 7482(a), and we affirm.

Henderson's parents lived in Boise, where they had reared him. Even after graduating from the University of Idaho in 1989, he maintained many personal contacts with Boise. For instance, he received mail at his parents' residence, lived there between work assignments, and kept many belongings and his dog there. He also was registered to vote in Idaho, paid Idaho state income tax, maintained an Idaho driver's license, and maintained his bank account in Idaho. During 1990, he spent about two to three months in Boise, staying at his parents' residence. While he was there, he performed a few minor jobs to maintain or improve the family residence.

In 1990, Henderson worked as a stage hand for Walt Disney's World of Ice, a traveling show. His employers' corporate offices were in Vienna, Virginia. Henderson was employed on a tour by tour basis. He testified that at the end of one tour, he would be contacted about participating in the next one. Following the completion of a tour, he re-

turned to his parents' home in Boise. He worked on three different Disney tours that year. The first lasted from January 1 to May 13, the second from July to November, and the third from December 5 to December 31. He traveled on tour to thirteen states and Japan. The tours stopped in each city for a few days or weeks. While traveling, he received $30 per day to cover expenses.

Henderson claims that he looked periodically for employment in Boise between the tours, but the evidence showed that he worked as a stage hand only for a single ZZ Top concert. The Tax Court found that while he returned to Boise in his "idle time," his source of employment during the tax year had no connection to Boise. On appeal, Henderson contends that his 1990 tax home was Boise, primarily based on his extensive personal contacts there.

■ Internal Revenue Code § 162(a)(2) allows a deduction for all ordinary and necessary "traveling expenses ... while away from home in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2). This section embodies "a fundamental principle of taxation"-that the cost of producing income is deductible from a person's taxable income. *Hantzis v. Commissioner*, 638 F.2d 248, 249 (1st Cir.1981). To qualify for the "away from home" deduction, the Supreme Court has held that the taxpayer's expenses must (1) be reasonable and necessary expenses, (2) be incurred while away from home, and (3) be incurred while in the pursuit of a trade or business. *Commissioner v. Flowers*, 326 U.S. 465, 470, 66 S.Ct. 250, 252–53, 90 L.Ed. 203 (1946).

The first and third criteria are not at issue. The subject of this appeal is whether the expenses Henderson claims as deductions were incurred while "away from home." If Henderson establishes that his home was Boise, his reasonable traveling expenses on the Disney tours are deductible. The Tax Court concluded that Boise was not

Henderson's tax home because his choice to live there had nothing to do with the needs of his work; thus, the Tax Court held that Henderson could not claim the deduction for traveling expenses incurred while away from Boise. It held that Henderson had no tax home because he continuously traveled for work. We agree.

■ Henderson builds a strong case that he treated Boise as his home in the usual sense of the word, but "for purposes of [section] 162, 'home' does not have its usual and ordinary meaning." *Putnam v. United States*, 32 F.3d 911, 917 (5th Cir.1994) ("In fact, 'home'-in the usual case-means 'work.' "). We have held that the term "home" means "the taxpayer's abode at his or her principal place of employment." *Folkman v. United States*, 615 F.2d 493, 495 (9th Cir.1980); *see also Coombs v. Commissioner*, 608 F.2d 1269, 1275 (9th Cir.1979) (stating that "tax home" is generally, but not always, exact locale of principal place of employment). If a taxpayer has no regular or principal place of business, he may be able to claim his place of abode as his tax home. *See Holdreith v. Commissioner*, 57 T.C.M. (CCH) 1383, 1989 WL 97400 (1989).

■ A taxpayer may have no tax home, however, if he continuously travels and thus does not duplicate substantial, continuous living expenses for a permanent home maintained for some business reason. *James v. United States*, 308 F.2d 204, 207 (9th Cir. 1962); *Cerny v. Commissioner*, 62 T.C.M. (CCH) 1061, 1062 (1991), *aff'd by unpublished opinion*, 2 F.3d 1156 (9th Cir.1993).[1] Clearly, if a taxpayer has no "home" for tax purposes, then he cannot deduct under § 162(a)(2) for expenses incurred "away from home." This is for good reason. In *James*, we examined the statutory precursor to the present version of § 162(a) and explained that the deduction was designed to mitigate the burden on taxpayers who travel on busi-

---

1. Although perhaps surprising at first blush, this rule is well-established. *See Andrews v. Commissioner*, 931 F.2d 132, 137 (1st Cir.1991) ("The Commissioner and courts have adhered consistently to this policy that living expenses duplicated as a result of business necessity are deductible, whereas those duplicated as a result of personal choice are not."); *Deamer v. Commissioner*, 752 F.2d 337, 339 (8th Cir.1985); *Rosenspan v. United States*, 438 F.2d 905, 912 (2d Cir.1971); *Barone v. Commissioner*, 85 T.C. 462, 465, 1985 WL 15392 (1985), *aff'd by unpublished decision*, 807 F.2d 177 (9th Cir.1986).

ness. 308 F.2d at 207. The burden exists "only when the taxpayer has a 'home,' the maintenance of which involves substantial continuing expenses which will be duplicated by the expenditures which the taxpayer must make when required to travel elsewhere for business purposes." *Id.; see also Andrews*, 931 F.2d at 135 (emphasizing that the deduction's purpose was to mitigate duplicative expenses); *Hantzis*, 638 F.2d at 253. Thus, a taxpayer only has a tax home-and can claim a deduction for being away from that home-when it appears that he or she incurs substantial, continuous living expenses at a permanent place of residence. *James*, 308 F.2d at 207–08.

▮ Revenue Ruling 73–539, 1973–2 C.B. 37, outlines three factors to consider in determining whether a taxpayer has a tax home or is an itinerant.[2] Essentially, they are (i) the business connection to the locale of the claimed home; (ii) the duplicative nature of the taxpayer's living expenses while traveling and at the claimed home; and (iii) personal attachments to the claimed home. While subjective intent can be considered in determining whether he has a tax home, objective financial criteria are usually more significant. *Barone*, 85 T.C. at 465.

▮ The location of Henderson's tax home is a determination of fact reviewed for clear error. *Frank v. United States*, 577 F.2d 93, 97 (9th Cir.1978). Similarly, we believe the determination of whether a taxpayer has a tax home or is an itinerant depends on the facts of each case and should be reviewed for clear error. Considering these factors, the Tax Court did not clearly err when it concluded that Henderson is an itinerant taxpayer.

First, Henderson had virtually no business reason for his tax home to be in any location-he constantly traveled in 1990 as part of his work with the World on Ice tours. His personal choice to return to Boise was not dictated by business reasons. Except for brief intervals, he was employed for the tours. He worked only one night in Boise. While he testified he looked for other work in

Boise between tours, he also testified that at the end of each tour he would have a contract talk with the company manager about the next tour. The Tax Court determined that Henderson merely returned to Boise during his "idle time" between tours. While his reasons for returning may be entirely understandable, we cannot say the Tax Court clearly erred in concluding they were personal, not business, reasons. His minimal employment efforts in Boise do not change this analysis.

The importance of the business reason for residing in a certain place is illustrated in *Hantzis*. In that case, the First Circuit disallowed the "away from home" deduction for a law student from Boston who took a summer job in New York. The court held that she did not have a tax home in Boston, even though her husband lived in Boston and she lived there during the school year, because she had no business reason to maintain a home in Boston during the summer while she worked in New York. The court explained why the deduction did not apply in those circumstances:

> Only a taxpayer who lives one place, works another and has business ties to both is in the ambiguous situation that the temporary employment doctrine is designed to resolve.... [A] taxpayer who pursues temporary employment away from the location of his usual residence, but has no business connection with that location, is not "away from home" for purposes of section 162(a)(2).

*Hantzis*, 638 F.2d at 255.

Second, Henderson did not have substantial, continuing living expenses in Boise that were duplicated by his expenses on the road. The evidence showed that he lived with his parents when he stayed in Boise. The Tax Court found that he paid no rent and had no ownership interest in his parents' home. His financial contributions in Boise were limited. He contributed some labor to maintenance and improvement of the home while he was there, and he paid about $500 for supplies.

---

**2.** While Revenue Rulings do not control our decision, they are instructive because they represent the interpretations of the agency responsible for enforcing the tax laws. *See Idaho Ambucare Ctr., Inc. v. United States*, 57 F.3d 752, 756 (9th Cir. 1995).

While his parents may have expended money that benefited Henderson as well-i.e., maintaining a mortgage, paying utilities, and so forth-this is not a substantial living expense incurred by Henderson. Further, any minor expense he may have incurred while living with his parents was not continuing during the periods while he traveled on tour. That is, there is no evidence he had any expenses in Boise while he traveled on the Disney tours.

The fact that Henderson may have incurred higher expenses while traveling with Disney than he would have if he had obtained a full-time job in Boise is not dispositive. The issue presented is whether his claimed expenses were incurred while he was away from his tax home. To assume that Henderson is entitled to the deduction simply because Henderson incurred higher expenses than he would have had he worked in Boise ignores the important question of whether Boise was his tax home at all. Only if Boise is his tax home can Henderson claim deductions for expenses incurred while away from Boise.

Because these two factors weigh against finding that he had a tax home in Boise, the Tax Court did not clearly err when it discounted his evidence on the third factor: personal attachment to Boise. Henderson cites cases, *e.g. Horton v. Commissioner*, 86 T.C. 589, 593, 1986 WL 22108 (1986), which hold that a taxpayer may treat a personal residence as his tax home even if it is not the same as the place of his temporary employment with a certain employer. This principle does not help Henderson, however, because he cannot establish any (non-*de minimis*) business connection to Boise to justify the position that it was his permanent tax home. *See Hantzis*, 638 F.2d at 254–55. Thus, travel away from Boise while on tour with Disney was not travel "away from home" as that term is understood for income tax purposes.

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting.

The Tax Code provides that travel expenses are fully deductible, so long as they are incurred while "away from home" in the pursuit of business. I.R.C. § 162(a)(2).

Henderson fits comfortably within this language. He lived with his parents in Boise, which made their home his home under any reasonable definition of the term. And he incurred travel expenses in pursuing a job that moved from town to town. Given the itinerant nature of his employment, Henderson could not have avoided these travel expenses by moving his home closer to work. He is thus easily distinguished from the taxpayer in *Hantzis v. Commissioner*, 638 F.2d 248 (1st Cir.1981), who could have avoided the travel expenses altogether by moving closer to her work. *Hantzis*'s extra-statutory requirement that a home is not a "tax home" unless dictated by business necessity has no application when the job itself has no fixed location.

The other reasons offered by the IRS for denying Henderson his traveling expense deduction are not supported by the Code or the regulations, nor do they make any sense. That Henderson's parents did not charge him room and board is of no consequence. Neither the Code nor common experience requires that a taxpayer pay for his home, else all minors and many in-laws would be deemed homeless. "Home" is not a term of art; it is a common English word meaning a permanent place where a person lives, keeps his belongings, receives his mail, houses his dog—just as Henderson did. Indeed, a grown son living in his parents' house is said to be living "at home." Whether he compensates his parents in cash, by doing chores or through filial affection is none of the Commissioner's business. What matters is that, by going on the road in pursuit of his job, Henderson had to pay for food and lodging that he would not have had to buy had he stayed home.

*James v. United States*, 308 F.2d 204 (9th Cir.1962), cuts against the government. Despite some imprecise language in the opinion, the facts there were very different. George James was on the road 365 days a year and had *no* permanent home; he spent his entire life traveling from hotel to motel. Wherever a weekend or holiday found him, he would stay there until it came time to go to his next location. James thus was, indeed, a tax turtle—someone with no fixed residence.

**502**

Henderson is very different: He had a home in Boise, a place where he returned when he wasn't working. He was no more a tax turtle than anyone else who travels a lot for business. That his home happens to be owned by his parents makes it no less his home.[1]

Fast planes and automobiles have turned us into a nation of itinerants. The tradition of families living together in one city, even under one roof, is sadly disappearing. Yet there is virtue in keeping families together, in parents who welcome their adult children under their roof. Leave it to the IRS to turn a family reunion into a taxable event. Henderson is being hit with extra taxes because his lifestyle doesn't conform to the IRS's idea of normalcy. But why should the government get extra money because the Hendersons chose to let their son live at home? Had they given him $600 a month to rent an apartment next door, Henderson surely would have gotten the travel deduction. I see no reason why the Henderson family ought to be penalized because the parents gave their son a gift of housing rather than cash—or why the Commissioner should be the beneficiary of this parental generosity. If Congress had said it must be so, I would bow to its wisdom. But Congress said no such thing and I do not feel bound to give the same deference to the Commissioner's litigating position.[2] Given the dearth of authority or common sense supporting the Commissioner's view, we are free to encourage happy family arrangements like those between Henderson and his mom and dad.

In the name of family values, I respectfully dissent.

1. *James*'s emphasis on duplication of expenses is unnecessary to the holding, and mistaken to boot. Duplication is one possible method of sifting out business expenses from personal ones, but not the method chosen by Congress. Section 162(a)(2) requires only that the taxpayer be away from home in pursuit of business; meals, for example, are fully deductible even though the expense is not duplicated back at home.

2. Revenue Ruling 73-529 is entitled to some deference—exactly how much is unclear—but certainly far less than the statutesque deference we give regulations. *See Estate of McLendon v. Commissioner,* 135 F.3d 1017, 1023–24 (5th Cir. 1998); *First Chicago NBD Corp. v. Commission-*

*er,* 135 F.3d 457, 459–60 (7th Cir.1998). Because the Service cannot easily recant a position after a ruling is published, it has reason to be overly stingy in drafting. Institutional pressures may also drive the Service to stretch the language of the Code; it's easier for the Executive Branch to have the Service milk more revenue out of the existing Code than to persuade Congress to amend it. Moreover, unlike most regulations, Revenue Rulings are not subject to the notice-and-comment procedures of the Administrative Procedure Act. Ruling 73-529 sweeps too broadly to be persuasive here: Under the Ruling, Henderson would get no deduction even if he spent ten months a year at home instead of ten weeks, simply because he paid no rent.