IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JERED R. DOTSON,                        )
                                        )
            Plaintiff,                  )     TC-MD 190312N
                                        )
       v.                               )
                                        )
DEPARTMENT OF REVENUE,                  )
State of Oregon,                        )
                                        )
            Defendant.                  )     **DECISION**

Plaintiff appealed Defendant's Conference Decision Letter, dated June 14, 2019, for the

2015 tax year.  A trial was held on January 13, 2020, in the courtroom of the Oregon Tax Court.

Brian Hein and Laurie Brock, licensed tax consultants, appeared on behalf of Plaintiff.  Plaintiff

and his mother, Sandra "Sandy" Wickizer (Wickizer) testified on behalf of Plaintiff.  Deborah

Johnsen appeared on behalf of Defendant.  Plaintiff's Exhibits 1 to 6 and Defendant's Exhibits A

to G were received without objection.  Upon the agreement of the parties, Plaintiff's Exhibit 7

was received without objection following trial.

## I.  STATEMENT OF FACTS[1]

On September 8, 2014, Plaintiff was indentured into the training program of the Joint

Apprenticeship & Training Committee of the NW Line Construction Industry (JATC) and he

participated in the program through 2015.  (Ptf's Ex 4 at 1.)  The JATC required Plaintiff to

travel at his own expense to jobs in "Oregon, Washington, 10 northern counties in Idaho, and 3

northern counties of California, as assigned by the NW Line JATC."  (*Id.*)  Plaintiff had no

control over the location or duration of any of his jobs in 2015.  Plaintiff was employed by

---

[1] Unless otherwise noted, facts recited in the statement of facts are based upon Plaintiff's testimony.

Michels Power in Boardman, Oregon, from February 9, 2015, through March 16, 2015; by

Christenson Electric in Portland, Oregon, from April 3, 2015, through June 23, 2015; and by

Potelco, Inc. in Puyallup, Washington, from July 20, 2015, through January 22, 2016. (Ptf's Ex

4 at 2, 5-15.[2]) In between jobs he was unemployed. (*Id.* at 2.) Potelco and Michels Corporation

each confirmed that they did not reimburse Plaintiff for expenses in 2015. (*Id.* at 17-18.)

The JATC required Plaintiff to attend mandatory orientation, interviews, safety training,

and supplemental instruction. (Ptf's Ex 4 at 1.) The JATC held classes every other Saturday

from November to May, with an additional 10-day training session held between January and

April. (*Id.*) The JATC classes and trainings were unpaid and Plaintiff was responsible for his

travel costs, tools, and safety gear with no right to reimbursement. (*Id.*) Plaintiff provided a

2015 "NW Line Class Calendar" listing classes in Springfield or Eugene on the following dates:

1/10, 1/24, 2/07, 2/21, 3/07, 3/21, 4/04, 4/18, 5/16, 12/05 and 12/19. (Ptf's Ex 3.[3]) It also listed

trainings in Roseburg from 3/23 through 3/27; in Portland from 4/27 through 5/01; in Seattle

from 5/11 through 5/15 and 6/15 through 6/19; and in Spokane from 9/21 through 9/25. (*Id.*)

Other classes listed do not clearly identify the location, such as on 5/02, 5/30, 11/07, and 11/21.

(*See id.*) Plaintiff attended a training in Astoria, Oregon from 1/12 to 1/21. (*See* Ptf's Ex 5 at 5.)

Plaintiff's bank statements list purchases in Astoria between 2/01 and 2/04 (Ptf's Ex 2 at

4-5); in Portland and Eugene from 4/27 through 5/01 (*id.* at 17-19); in Bend and LaPine on 5/02

(*id.* at 20); in Seattle on 5/30, 5/31, and 6/02 (*id.* at 24, 27); in Renton on 11/07 (*id.* at 54); and in

---

[2] Plaintiff also provided his monthly progress reports showing total hours worked each day and each month, with a further breakdown of hours into educational categories of experience. (Ptf's Ex 7.)

[3] The calendar was created by Plaintiff and his representatives, using his monthly progress reports, class dates, and bank statements. The calendar is not a complete record of Plaintiff's work and classes. For example, it is missing the training Plaintiff completed in Astoria in January. (*See* Ptf's Ex 5 at 5.)

Eugene on 11/21 (*id.* at 56-57). They do not list any purchases in Roseburg during March or in Spokane during September. (*Id.* at 9-11, 42-47.)

In 2015, Plaintiff lived at his father's house in Eugene along with his mother and brother. He had lived in that house since he was 14 years old and used that address on his driver's license and mail. Plaintiff paid his father rent of $300 per month in cash or performed work with an equivalent value; for instance, he replaced the hardwood floors and trimmed trees. Plaintiff's bank statements list numerous ATM withdrawals and debits, typically totaling several thousand dollars each month. (*See* Ptf's Ex 2.) The statements do not reflect a consistent monthly pattern of cash withdrawals for $300. (*See id.*) Plaintiff testified that he did not always pay his father exact amounts; he paid what he could, and he may have withdrawn some cash for himself at times. Wickizer testified that she lived with Plaintiff in 2015 and she confirmed that Plaintiff paid rent to his father as he described.

Plaintiff stayed in hotels and motels when he traveled for work in 2015. (*See* Ptf's Ex 4 at 19.) He typically paid a weekly rate, with lodging expenses totaling $7,398 based on his bank statements. (*Id.*) Plaintiff typically worked five days per week and returned to Eugene on weekends, with some exceptions for holidays and the occasional "safety stand down." Plaintiff traveled to and from job sites in his own vehicle. He kept a mileage log, but it was lost after his father died in 2016 and the house was cleaned for sale.

On his 2015 personal income tax return, Plaintiff claimed $25,539 in unreimbursed employee business expenses; $24,819 after the two percent reduction. (*See* Def's Ex A at 6-9.) Of that amount, $183 was for tax preparation; $465 was for union dues; $10,605 was for mileage

(based on 18,444 miles[4]); $13,934 was for travel (using per diem rates); and $950 was for other business expenses, including classes and books. (*Id.*)

Defendant adjusted Plaintiff's 2015 return, concluding that he lacked a regular place of business or a tax home at his abode; therefore, he was itinerant. (Def's Ex B at 18-19.) As a result, Defendant disallowed Plaintiff's travel expenses (lodging, meals, and mileage). (*See id.*) Defendant accepted that Plaintiff was not entitled to reimbursement and would have allowed his mileage associated with traveling from job sites to mandatory trainings but found that his documentation was inadequate to support any deduction. (*See id.* at 16-19.) At conference, Defendant's conference officer upheld the auditor's adjustments and additionally found that the letters from Plaintiff's employers were insufficient to conclude that Plaintiff lacked a right to reimbursement for any of his expenses. (Def's Ex C at 6.)

## II. ANALYSIS

The issue presented is whether Plaintiff may deduct certain unreimbursed employee business expenses for the 2015 tax year under IRC section 162(a). Specifically, the parties dispute 1) whether Plaintiff had a tax home at his abode in Eugene, Oregon, or was itinerant; 2) whether Plaintiff adequately substantiated his employee business expenses and, if so, in what amount; and 3) whether Plaintiff was entitled to reimbursement from his employers.

Subject to certain modifications not applicable here, the Oregon legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the [IRC] relating to the taxable income of individuals * * *." ORS 316.007; *see also* ORS 316.002 and 316.048 (adopting to federal definition of taxable income).[5] To the extent practicable, Oregon

---

[4] This includes 394 miles for one round trip to Astoria; 25 round trips to Puyallup at 508 miles each; 12 round trips to Portland at 220 miles each; and 5 round trips to Boardman at 542 miles each. (Def's Ex A at 8.)

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

follows "the administrative and judicial interpretations of the federal income tax law." ORS

314.011(3). Where two or more federal courts have reached conflicting interpretations of a

provision of tax law, the rule observed by the Commissioner of Internal Revenue controls. *Id.*

Allowable deductions are a "matter of legislative grace" and the burden of proof is placed

on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct

1039, 117 L Ed 2d 226 (1992). As the party seeking affirmative relief, Plaintiff bears the burden

of proof by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence

means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of*

*Revenue.*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient

to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). In

an income tax appeal, this court has the statutory authority to determine the correct amount of the

deficiency "even if the amount so determined is greater or less than the amount of the assessment

determined by the Department of Revenue[.]" ORS 305.575.

A.      *Business Expense Deduction, Generally*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid

or incurred during the taxable year in carrying on any trade or business, including * * *

> "(2) traveling expenses (including amounts expended for meals and lodging other
> than amounts which are lavish or extravagant under the circumstances) while
> away from home in the pursuit of a trade or business.
>
> "* * * For purposes of paragraph (2), the taxpayer shall not be treated as being
> temporarily away from home during any period of employment if such period
> exceeds 1 year."

IRC section 262 generally disallows deductions for "personal, living, or family expenses" not

otherwise expressly provided for in the IRC. "The purpose of IRC section 162(a)(2) is to

ameliorate the effects of business which requires taxpayers to duplicate personal living

expenses[.]" *Harding v. Dept. of Rev.* (*Harding*), 13 OTR 454, 458 (1996). "Consequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Id.*

B.      *"Away From Home" Requirement*

To deduct travel expenses under IRC section 162(a)(2), a taxpayer must show that the expenses "(1) were incurred in connection with a trade or business; (2) were incurred while away from home; and (3) were reasonable and necessary." *Morey v. Dept. of Rev.* (*Morey*), 18 OTR 76, 80-81 (2004), (*citing Finn v. Dept. of Rev.*, 10 OTR 393, 395 (1987)). There is no dispute here about the first and third requirements. Rather, the parties disagree about the second requirement, whether Plaintiff's expenses were incurred while "away from home."

"In general, a taxpayer's home for the purposes of section 162(a)(2) - *i.e.,* the taxpayer's 'tax home' - is the taxpayer's principal place of business or employment." *Morey*, 18 OTR at 81, *citing Harding*, 13 OTR at 459. "[A] person's principal place of business need not be limited to a specific location or job site. A principal place of business may include an entire metropolitan area. Rather than looking at particular jobs, all of the job prospects in the area must be considered." *Hintz v. Dept. of Rev.*, 13 OTR 462, 467 (1996), (*citing Ellwein v. United States*, 778 F2d 506, 510 (8th Cir 1985)). Where the taxpayer's employment is temporary, the taxpayer may have a tax home at their place of abode. *See Morey*, 18 OTR at 81 (citations omitted).

To have a tax home at one's place of abode, taxpayer must maintain a permanent residence in "a real and substantial sense." Rev Rul 73-529, 1973-2 CB 37. Otherwise, the taxpayer has no "tax home" and is said to be "itinerant." *Id.*; *see also Henderson v. Comm'r*, 143 F3d 497, 499 (9th Cir 1998) (holding that a taxpayer has no tax home if "he continuously travels and thus does not duplicate substantial, continuous living expenses for a permanent home

maintained for some business reason"). Absent a permanent home where a taxpayer incurs "substantial, continuous living expenses," the taxpayer required to travel for business purposes does not duplicate living expenses. *See id.*; *see also Bochner v. Comm'r*, 67 TC 824, 827 (1977) (explaining that it would be unreasonable to expect a taxpayer to move their permanent residence to every temporary job location). Notwithstanding that food and lodging typically cost more on a business trip than what one would pay if not traveling, courts have required duplication of expenses to allow a deduction. *See James v. US*, 308 F2d 204 (9th Cir 1962).

To determine if a taxpayer has a home in a "real and substantial sense" at their place of abode, the court examines all relevant facts and circumstances. Rev Rul 73-529. There are three "objective factors" to be considered:

> "(1) Whether the taxpayer performs a portion of his business in the vicinity of his claimed abode and uses such abode (for purposes of his lodging) while performing such business there;

> "(2) Whether the taxpayer's living expenses incurred at his claimed abode are duplicated because his business requires him to be away therefrom; and

> "(3) Whether the taxpayer

>> "(a) has not abandoned the vicinity in which his historical place of lodging and his claimed abode are both located,

>> "(b) has a member or members of his family (marital or lineal only) currently residing at his claimed abode, *or*

>> "(c) uses his claimed abode frequently for purposes of his lodging."

*Id.*; *see also Henderson*, 143 F3d at 500 (applying the three objective factors identified). If a taxpayer satisfies all three objective factors, then they have a tax home at their place of abode. Rev Rul 73-529. If a taxpayer satisfies two of the factors, then all facts and circumstances will be closely scrutinized to determine whether their abode is their tax home. *Id.* A taxpayer who fails to satisfy at least two of the factors is regarded as an itinerant. *Id.*

Given the fact-specific nature of the three-factor test, a review of case law is helpful to understand its application.

      1.      *Court denied taxpayer's claimed tax home*

In *Bochner,* the court reiterated that "a taxpayer is expected to maintain his home in the vicinity of his principal place of employment." 67 TC at 824. Taxpayer claimed a tax home in Glendora, where he had lived and worked from 1957 until he was laid off in 1970. *Id.* at 825-26. He continued to live there after 1970 while looking for employment, but ultimately accepted temporary jobs out of state. *Id.* The court observed that he lacked a business connection with Glendora and, in light of the large number of layoffs, his prospects for future employment in the area lacked promise. *Id.* at 828.

In *Cook v. Comm'r*, 37 TCM (CCH) 771 (1978), taxpayers were traveling ministers who did not pay rent or taxes at their home; the only expenses they incurred were minor maintenance costs. Thus, they did not duplicate meal or lodging expenses when travelling.

In *Hantzis v. Comm'r*, 638 F2d 248, 249-50, 254 (1st Cir 1981), the court applied the "business exigency rule" from *Comm'r v. Flowers*, 326 US 465, 66 S Ct 250, 90 L Ed 203 (1946), concluding that a law student had no business reason for maintaining her home in Boston where she lived with her husband and attended school full-time. Taxpayer had accepted summer employment in New York City after failing to obtain employment in Boston. Her husband held full-time employment in Boston and the couple maintained a home there. *Id.*

In *Henderson*, the taxpayer, who was a stage hand for a traveling ice show, claimed a tax home at his parents' home in Boise, Idaho, to which he returned in between tours. 143 F3d at 498, 501. Taxpayer grew up in Boise and maintained numerous personal contacts there, but "had virtually no business reason for his tax home to be in any location" and his "choice to return to

Boise was not dictated by business reasons." *Id.* at 498, 500.  Although taxpayer "performed a few minor jobs to maintain or improve the family residence[,]" he "paid no rent and had no ownership interest in his parents' home." *Id.*

Recently, in *Liljeberg v. Comm'r*, 148 TC 83 (2017), the court upheld the denial of traveling expenses to three nonresident aliens who worked temporary summer jobs in the United States.  The court held they were not "away from home" because they were full-time students who lacked a business reason for maintaining homes in their home countries.  *Id.* at 98.

2.       *Court accepted taxpayer's claimed tax home*

In *Semock v. Comm'r*, 68 TCM (CCH) 378, *2, *4 (1994), the taxpayer was an engineer and consultant who maintained a home in Cape Canaveral, Florida, while working temporary contract jobs for a few months each in Virginia, Florida, North Carolina, Vermont, and Alabama. Taxpayer initially moved to Cape Canaveral for work and, during the tax years at issue, paid rent and utilities at his apartment there.  *Id.*  During periods of unemployment, taxpayer "returned to his home and diligently sought employment in the Cape Canaveral area."  *Id.* at *4.

In *Johnson v. Comm'r*, 115 TC 210, 211 (2000), taxpayer was a sea captain who traveled worldwide for long periods of time and maintained a personal residence with his family in Freeland, Washington, where his family lived.  The court accepted that taxpayer was required to maintain a personal residence *somewhere* and declined to second guess his choice of Freeland as compared with any of the other locations to which he traveled.  *Id.* at 221-222.

3.       *Application of tax home factors*

The first factor is business activity in the vicinity of Plaintiff's abode.  Plaintiff did not work in Eugene in 2015 and the court received no evidence of his job prospects in Eugene after the 2015 tax year.  Plaintiff's only business connection to Eugene was the JATC classes he took

every other weekend from November through May. The JATC training program was, by its nature, limited duration and the court received no evidence that Plaintiff had continuing training or other work duties in Eugene beyond the training program. Plaintiff's business connection to Eugene is more akin to the taxpayer in *Hantzis* who lived and attended school in Boston while working in New York. Plaintiff presented no evidence of a business reason for maintaining his home in Eugene beyond his JATC training program.

The second factor is duplication of living expenses. Plaintiff and his mother each testified that Plaintiff paid his father rent or performed services in lieu of payment. Because the rental payments were reportedly made in cash, there is no documentary evidence to corroborate Plaintiff's testimony and his bank statements are inconclusive. Although it appears Plaintiff had sufficient cash on hand to pay his father rent, the bank statements reveal no pattern of consistent monthly withdrawals. Even assuming Plaintiff periodically made payments to his father for rent, it does not appear that he duplicated any other living expenses. Plaintiff's living situation here is more akin to *Cook* and *Henderson*, where the taxpayers contributed somewhat to maintenance costs but did not duplicate significant expenses while traveling.

The third factor considers Plaintiff's connections to his place of abode and frequency of use. Plaintiff lived in the Eugene house since he was 14 and he used the address for his mail and driver's license. Plaintiff returned frequently to the house, staying there during periods of unemployment and returning on weekends while he was employed. Plaintiff's lineal family members lived at the Eugene house. This factor supports Plaintiff.

As in many tax home cases, the outcome here is not clear cut. The third factor supports a finding that Plaintiff's tax home was Eugene, but the first two factors generally weigh against him. Although Plaintiff had to maintain a home somewhere, his business ties to Eugene were

insubstantial and he did not incur significant expenses at his Eugene home such that he duplicated them while traveling for work. On balance, the court finds that Plaintiff did not have a tax home in 2015 and was itinerant within the meaning of Revenue Ruling 73-529.

C.      *Substantiation of Deductible Expenses, Right to Reimbursement*

Because Plaintiff lacked a tax home at his place of abode in 2015 he was not "away from home" and may not deduct travel expenses such as lodging and meals. However, Plaintiff may deduct expenses associated with driving between job sites and trainings required by the JATC. *See* Rev Rule 99-7 ("the costs of going between one business location and another business location generally are deductible under § 162(a)"). Business use of a personal vehicle is subject to the strict substantiation requirements in IRC section 274(d), which require a taxpayer to "substantiate by adequate records, or by sufficient evidence corroborating the taxpayer's own testimony, the amount of the expense, as well as the time, place, and business purpose of the taxpayer's expenditure or use of the property." *Khalaf v. Dept. of Rev.*, TC 5347, 2020 WL 630244 at *8 (Or Tax Feb 5, 2020). Generally, a record of the expense should be made at or near the time taxpayer uses the vehicle, such as with a mileage log. *See id.*

Plaintiff testified that he kept a mileage log, but it was lost when his father's house was sold in 2016. Plaintiff provided a calendar of his trainings in 2015, although it was incomplete or inaccurate in several respects: it did not include the training in Astoria, some locations were vague (e.g., "WASH"), and several of the training dates and locations listed were contradicted by Plaintiff's bank statements. Plaintiff also provided a letter from the JATC confirming that he was required to attend classes every other Saturday from November through May at his own expense. The JATC letter provides independent evidence corroborating some of the trainings

reported by Plaintiff. Accordingly, the court will allow mileage to and from those JATC classes when Plaintiff was assigned to a temporary job site outside the Eugene metropolitan area.

Plaintiff's training calendar reports the following Saturday classes that coincide with Plaintiff's temporary job sites in 2015:

| Date | Class location | Job site | Round Trip Miles |
|---|---|---|---|
| 2/21 | Springfield, OR | Boardman, OR | 542 |
| 3/07 | Springfield, OR | Boardman, OR | 542 |
| 4/04 | Springfield, OR | Portland, OR | 216 |
| 4/18 | Springfield, OR | Portland, OR | 216 |
| 5/02 | Illegible | Portland, OR | --- |
| 5/16 | Eugene, OR | Portland, OR | 218 |
| 5/30 | "WASH" | Portland, OR | --- |
| 11/07 | "WASH" | Puyallup, WA | --- |
| 11/21 | "WASH" | Puyallup, WA | --- |
| 12/05 | Springfield, OR | Puyallup, WA | 508 |
| 12/19 | Springfield, OR | Puyallup, WA | 508 |
| **TOTAL** | | | 2,750 |

(Ptf's Exs 3-4.) As noted above, one class location is illegible and three other class locations are identified as "WASH," presumably referring to Washington state. Without a specific class location identified, the court cannot allow any mileage deduction under the strict substantiation requirements of IRC section 274(d). The court concludes that Plaintiff has substantiated 2,750 business miles for 2015. At $0.575 per mile, that corresponds to a deduction of $1,581.

Defendant raised a third issue concerning Plaintiff's right to reimbursement from his employers. Here, Plaintiff's mileage is based on attending Saturday classes required by the JATC. The JATC letter clearly states that Plaintiff was required to cover his own travel costs to attend those classes. The court is persuaded that Plaintiff had no right to reimbursement for mileage to attend JATC classes in 2015.

/ / /

/ / /

### III.  CONCLUSION

Upon careful consideration, the court concludes that Plaintiff lacked a tax home at his place of abode in Eugene in 2015.  Accordingly, Plaintiff did not incur expenses while "away from home" under IRC section 162(a).  The court further concludes that Plaintiff is allowed a mileage expense deduction of $1,581 for travel between temporary job sites and Saturday classes required by the JATC.  Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2015 tax year, Plaintiff is allowed a mileage expense deduction of $1,581.

IT IS FURTHER DECIDED that, for the 2015 tax year, Plaintiff's remaining travel expenses are disallowed.

Dated this ___ day of August 2020.

ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on August 12, 2020.*