T.C. Summary Opinion 2007-95

UNITED STATES TAX COURT

ROBERT AND CHERYL MCKEOWN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21967-05S.                    Filed June 13, 2007.

Robert and Cheryl McKeown, pro sese.

<u>David L. Zoss</u>, for respondent.

KROUPA, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

[1]All section references are to the Internal Revenue Code in
effect for 2003, and all Rule references are to the Tax Court
Rules of Practice and Procedure, unless otherwise indicated.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $7,708 deficiency in petitioners' Federal income tax for 2003. After concessions,[2] we are asked to decide two issues. First, we are asked to decide whether petitioner Robert McKeown (Mr. McKeown) was away from home when he worked as an airline mechanic for Northwest Airlines (NWA) in Detroit, Newark, and New York to determine whether petitioners are entitled to deduct expenses for his vehicle, meals, and lodging while Mr. McKeown was away from Monticello, Minnesota, in the Minneapolis area where he normally lived. We conclude that he was not away from home. Second, we are asked to decide whether petitioners substantiated various other expenses. We conclude that petitioners have substantiated and are entitled to deduct some of these other expenses.

## Background

Some of the facts have been stipulated and are so found. Petitioners resided in McDonough, Georgia, at the time they filed the petition.

### Mr. McKeown's Employment With NWA

Mr. McKeown began working as a mechanic for NWA in 1996. Although he was originally employed in Atlanta, Georgia, Mr.

---

[2]See _infra_ note 3 for the concessions each party made.

McKeown and his family decided to relocate to the Minneapolis area so Mr. McKeown could work for NWA in Minneapolis.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an employee had worked for NWA regardless of where the airline facility was located. An employee with higher seniority could exercise his or her seniority to bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump. Most employees exercised their seniority in the way that would give them positions in cities as close as possible to their families.

Mr. McKeown received a bump notice in April 2003. Mr. McKeown chose to exercise his seniority and bump another employee rather than accept the layoff. Mr. McKeown was first bumped to Detroit, Michigan, effective on April 11, 2003. Mr. McKeown was then bumped again and took a position in Newark, New Jersey, effective on April 25, 2003. Mr. McKeown was bumped again and

took a position at John F. Kennedy International Airport in New York, effective on June 8, 2003.

Mr. McKeown received another bump notice on July 8, 2003, and was laid off because he had no one else to bump. Mr. McKeown spoke to a manager in Newark who told him he would attempt to recall Mr. McKeown to Newark. Mr. McKeown was indeed recalled to Newark and began working there later in July 2003. Mr. McKeown worked in Newark for the rest of the year.

Once Mr. McKeown was bumped or displaced from Minneapolis, there was no job available for him to return to in Minneapolis. Mr. McKeown hoped to be able to return to Minneapolis as soon as there was an NWA job there that he had enough seniority to obtain. The timing of a return to Minneapolis would depend on NWA's needs for mechanics in that city as well as the choices of other mechanics also subject to the seniority system.

Mr. McKeown and petitioner Cheryl McKeown (Mrs. McKeown) decided that she and petitioners' teenage daughter would remain in the Minneapolis area while Mr. McKeown went to Detroit, Newark, and New York. Petitioners did not want to uproot the family, and thus Mr. McKeown incurred additional travel, lodging, and meal expenses in those cities rather than have the entire family move to his job locations. Mr. McKeown stayed in a travel trailer in Newark and New York. Mr. McKeown traveled back to see his family in Minnesota periodically.

All three family members had cellular phones during 2003. Mr. McKeown wore a uniform while he worked for NWA. Petitioners claimed they contributed some items to charity in 2003.

Petitioners' Return

Petitioners claimed certain expenses on Schedule A, Itemized Deductions, on the joint return for 2003. Respondent examined the return for 2003 and issued petitioners a deficiency notice in which he disallowed many of the expenses. Of the expenses still in dispute,[3] petitioners assert they are entitled to deduct claimed noncash charitable contributions as well as unreimbursed employee business expenses. The unreimbursed employee business expenses petitioners claimed include expenses for Mr. McKeown's vehicle, transportation, travel (including expenses related to car rentals, airline pass travel, and lodging), and meals while in Detroit, Newark, and New York as well as expenses for uniform cleaning and depreciation.

Petitioners timely filed a petition.

---

[3]Respondent concedes that petitioners are entitled to deduct a portion of personal property taxes, a portion of cash charitable contributions, a portion of certain amounts for tools, a portion of union dues, and a portion of tax preparation fees. Petitioners concede they are not entitled to deduct a portion of personal property taxes, a portion of cash charitable contributions, Internet expenses, a portion of certain amounts for tools, certain amounts for uniforms, a portion of union dues, and a portion of tax return preparation fees.

## Discussion

The parties resolved many of the disputed expenses before trial. We are asked to determine whether petitioners are entitled to deduct the remaining expenses. We begin by considering whether Mr. McKeown was away from home when he incurred expenses for his vehicle, transportation, and meals in Detroit, Newark, and New York.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as those for vehicles, meals, and lodging incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a). A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The duplicate costs are not deductible where

the taxpayer maintains two homes for personal reasons.  Sec. 262;
Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while
away from home.  Sec. 162(a)(2).  The word "home" for purposes of
section 162(a)(2) has a special meaning.  It generally refers to
the area of a taxpayer's principal place of employment, not the
taxpayer's personal residence.  Daly v. Commissioner, 72 T.C.
190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v.
Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's
tax home is his or her principal place of employment.  Peurifoy
v. Commissioner, 358 U.S. 59, 60 (1958).  The taxpayer's tax home
may be the taxpayer's personal residence if the taxpayer's
employment away from home is temporary.  Id.; Mitchell v.
Commissioner, T.C. Memo. 1999-283.  On the other hand, the
exception does not apply and the taxpayer's tax home remains the
principal place of employment if the employment away from home is
indefinite.  Kroll v. Commissioner, supra at 562.

It is presumed that a taxpayer will generally choose to live
near his or her place of employment.  Frederick v. United States,
603 F.2d 1292, 1295 (8th Cir. 1979).  A taxpayer must, however,
have a principal place of employment and accept temporary work in
another location to be away from home.  Kroll v. Commissioner,
supra.  A person who has no principal place of business nor a

place he or she resides permanently is an itinerant and has no tax home from which he or she can be away.  Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; Edwards v. Commissioner, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home.  See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home).  The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home.  Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971).  Where a taxpayer has no business connections with the primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere.  See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra.  In that situation, the expenses incurred while temporarily away from that residence are not deductible.  Hantzis v. Commissioner, supra; Bochner v. Commissioner, supra; Tucker v. Commissioner, supra;

see <u>McNeill v. Commissioner</u>, T.C. Memo. 2003-65; <u>Aldea v.</u>
<u>Commissioner</u>, T.C. Memo. 2000-136.

Once Mr. McKeown was bumped from Minneapolis, he had no job
to return to there.  His choices were to be laid off and have no
work, or to bump other employees and move to different cities to
continue working.  NWA no longer required Mr. McKeown to perform
any services whatsoever in the Minneapolis area once he was
bumped.  Although Mrs. McKeown and petitioners' daughter remained
in the family residence with occasional visits from Mr. McKeown
while he worked in Detroit, Newark, and New York, this fact alone
does not dictate that Mr. McKeown's tax home was in Monticello,
Minnesota, where the family residence was located.  Unlike
traveling salespersons who may be required to return to the home
city occasionally between business trips, Mr. McKeown's business
ties to the Minneapolis area ceased when he was bumped.

The Court understands that the NWA mechanics' lives were
unsettled and disrupted.  Mechanics did not know how long they
would have a job in one specific location.  They only knew the
system was based on seniority.  They could bump less senior
employees, and they could be bumped by more senior employees.
While we acknowledge that Mr. McKeown would have liked to return
to the Minneapolis area to work for NWA, Mr. McKeown did not know
when such a return would be possible due to the seniority system.
The likelihood of Mr. McKeown's return to a position in

Minneapolis depended on NWA's needs for mechanics there as well as the choices of more senior mechanics. Mr. McKeown did not know how long he would be in Detroit, Newark, or New York or where he might go next. It was not foreseeable that he would be able to return to Minneapolis at any time due to the seniority system. Thus we conclude there was no business reason for petitioners to maintain a home in the Minneapolis area. Petitioners kept the family residence in the Minneapolis area for purely personal reasons. Petitioners have failed to prove that Mr. McKeown had a tax home in 2003. Accordingly, Mr. McKeown was not away from home in Detroit, Newark, and New York, and the expenses he incurred while there are not deductible.

Substantiation of Expenses

We next turn to the substantiation issues to determine whether petitioners are entitled to deduct any remaining expenses. We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous.[4] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of

_____

[4]Petitioners do not claim the burden of proof shifts to respondent under sec. 7491(a). Petitioners also did not establish they satisfy the requirements of sec. 7491(a)(2). We therefore find that the burden of proof remains with petitioners.

legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001; Hradesky v. Commissioner, supra. The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

Unreimbursed Employee Business Expenses

We shall now consider whether petitioners are entitled to deduct the claimed expenses, beginning with the unreimbursed employee business expenses petitioners claimed on Schedule A.

In general, all ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable

year are deductible, but personal, living, or family expenses are not deductible. Secs. 162(a), 262. Services performed by an employee constitute a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). For such expenses, only certain types of documentary evidence will suffice.

Cleaning Expenses for Uniforms

We now examine those expenses not subject to the strict substantiation requirements. Petitioners claimed $722 for cleaning expenses for Mr. McKeown's NWA uniforms. Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Beckey v. Commissioner, T.C. Memo. 1994-514.

We are satisfied that petitioners incurred deductible expenses to clean Mr. McKeown's uniforms. Petitioners each attempted to explain how the cleaning costs were calculated but gave unclear testimony. Petitioners introduced a document on the letterhead of their certified public accountant that purports to indicate how the sum was calculated, but it suggests an excessive amount, 22 cleanings for shirts and pants per month, roughly corresponding to the number of days per month Mr. McKeown worked.

We may estimate the amount of deductible cleaning expenses under the Cohan rule. We adopt the unit cost of $1.35 listed on petitioners' exhibit as the cost to wash or dry one load of laundry. We find that approximately eight loads of laundry per month is a reasonable number to yield 22 clean shirts and pairs

of pants per month.  Petitioners are therefore entitled to deduct $259.20 for cleaning expenses for Mr. McKeown's uniforms in 2003.

<u>Depreciation Expenses</u>

Petitioners deducted $3,031 for depreciation of the tools he used at his job at NWA.  The costs of tools with useful lives greater than a year are recoverable by depreciation.  Secs. 167(a), 168(b); <u>Seawright v. Commissioner</u>, 117 T.C. 294, 305 (2001); <u>Clemons v. Commissioner</u>, T.C. Memo. 1979-273. Petitioners introduced a list and photographs of Mr. McKeown's tools as well as a depreciation schedule indicating that he purchased his tools on January 1, 2003.  Petitioners did not introduce any documentary evidence regarding the tools, however, such as receipts that would show their purchase price or the purchase date.  Petitioners also did not introduce evidence supporting the tools' expected useful lives.

Petitioners have not substantiated that they are entitled to a depreciation deduction.  Further, we are unable to estimate any amount for depreciation under the <u>Cohan</u> rule because the evidence petitioners introduced is inadequate.  Petitioners are therefore not entitled to deduct any amount for depreciation.

<u>Cellular Phone Expenses</u>

Petitioners claimed $1,800 of cellular phone expenses for 2003.  Cellular phones are included in the definition of "listed property" for purposes of section 274(d)(4) and are thus subject

to the strict substantiation requirements.  Sec. 280F(d)(4)(A)(v); Gaylord v. Commissioner, T.C. Memo. 2003-273. A taxpayer must establish the amount of business use and the amount of total use for the property to substantiate the amount of expenses for listed property.  Nitschke v. Commissioner, T.C. Memo. 2000-230; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Expenses subject to strict substantiation may not be estimated under the Cohan rule. Sanford v. Commissioner, supra at 827.

Petitioners did not prove that NWA required Mr. McKeown to have a cellular phone.  Petitioners introduced evidence that NWA required employees to have a telephone, but not necessarily a cellular phone.  Petitioners introduced copies of checks made out to cellular phone providers totaling approximately $2,350 but admitted at trial that they could not explain how they calculated the $1,800 they claimed.  Moreover, the amounts petitioners paid for cellular telephones for 2003 included charges for the cellular phones used by Mrs. McKeown and petitioners' daughter. Petitioners did not offer any evidence of how much of the cellular phone expenses was for Mr. McKeown's business use and how much for personal use.  Petitioners are therefore not entitled to deduct any cellular phone expenses for 2003.

Charitable Contributions

We finally consider petitioners' charitable contributions. Petitioners claimed they contributed property worth $3,014 to charitable organizations in 2003.

Charitable contributions are generally deductible under section 170(a).  No deduction is allowed, however, for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by a qualified donee organization.[5]  Sec. 170(f)(8)(A).  The deduction for a contribution of property equals its fair market value on the date contributed.  Sec. 1.170A-1(c)(1), Income Tax Regs.

Petitioners provided no documentation, substantiation, or testimony concerning their contributions of property for 2003. Petitioners are therefore not entitled to deduct any amount for charitable contributions of property.

---

[5]There are now stricter requirements for contributions of money.  Sec. 170(f)(17).  No deduction for a contribution of money in any amount is allowed unless the donor maintains a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution.  Id.  This new provision is effective for contributions made in tax years beginning after Aug. 17, 2006.  Pension Protection Act of 2006, Pub. L. 109-280, sec. 1217, 120 Stat. 1080.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.