T.C. Memo. 2007-149

UNITED STATES TAX COURT

LEONARD STOCKWELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21954-05.                    Filed June 13, 2007.

Leonard Stockwell, pro se.

<u>Lisa R. Woods</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $5,588 deficiency in petitioner's Federal income tax for 2003.  After concessions,[1] we are asked to decide two issues.  First, we are asked to decide whether petitioner was away from home when he worked as an

_____

[1]See <u>infra</u> note 3 for the concessions each party made.

airline mechanic for Northwest Airlines (NWA) in Milwaukee and Detroit to determine whether petitioner is entitled to deduct expenses for his vehicle, meals, and lodging while away from Savage, Minnesota, in the Minneapolis area where he normally lived. We conclude that he was not away from home. Second, we are asked to decide whether petitioner substantiated various other expenses. We conclude that petitioner has substantiated and is entitled to deduct some of these other expenses.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Savage, Minnesota, at the time he filed the petition.

Petitioner's Employment With Northwest Airlines

Petitioner began as an airline mechanic for NWA in 1991 and worked for NWA through 2005.[2] Petitioner worked in Minneapolis for most of his career with NWA.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an employee had worked for NWA regardless of where the airline facility was located. An employee with higher seniority could

---

[2]Although petitioner did experience a layoff for approximately 13 months near the beginning of his employment with NWA, it is of no moment to our decision.

exercise his or her seniority to bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump. Most employees exercised their seniority in the way that would give them positions in cities as close as possible to their families.

Petitioner received a bump notice in April 2003. Petitioner chose to exercise his seniority and bump another employee rather than accept the layoff. Bumping another employee meant petitioner could stay an NWA employee and could retain his health benefits. Some of the most senior mechanics were able to bump to positions in Duluth, Minnesota, but petitioner did not have the seniority to get a spot in this nearby city. Petitioner was able to bump to the next closest location, Milwaukee, Wisconsin. He started working in Milwaukee in April 2003.

Petitioner's position in Milwaukee had no specific end date. Petitioner expected to return to Minneapolis as soon as there was an NWA job available in Minneapolis that he had enough seniority to obtain. The timing of a return to Minneapolis would depend on

NWA's needs for mechanics in that city as well as the choices of the other mechanics also subject to the seniority system.

Petitioner worked in Milwaukee until August 2003 when NWA again notified him that he would be laid off from his position in Milwaukee. Petitioner once again chose to bump another employee, this time taking a position in Detroit, Michigan. He started in Detroit in early September 2003 and worked there for almost 2 years until August 2005.

Petitioner maintained a residence in Minneapolis throughout 2003 although he was working in Milwaukee and then Detroit for part of the year. Petitioner sometimes rented hotel rooms and sometimes stayed with other employees in hotel rooms they rented in Milwaukee and Detroit. Occasionally petitioner's work schedule allowed him to return to Minneapolis and stay at his residence. Petitioner had Internet access at his Minneapolis residence for August through November 2003.

Petitioner used some of his own tools in his work for NWA. Petitioner purchased most of these tools in his first 5 years working for NWA, so some of them were approximately 12 years old by 2003, the year at issue. Petitioner also had a cellular phone. His cellular phone number was the personal contact number he gave NWA.

Petitioner wore a uniform while he worked for NWA. He needed to clean his uniforms often because his work involved

airline fuel and oil and was messy.  He estimated that he worked approximately 22 days per month.

Petitioner claimed he contributed some items to Goodwill and made cash contributions to his church in 2003.

Petitioner's Return

Petitioner claimed certain expenses on Schedule A, Itemized Deductions, on the return for 2003.  Respondent examined the return and issued petitioner a deficiency notice in which he disallowed many of the expenses.  Of the expenses still in dispute,[3] petitioner assert he is entitled to deduct claimed cash and noncash charitable contributions as well as unreimbursed employee business expenses.  The unreimbursed employee business expenses petitioner claimed included expenses for his vehicle, lodging, and meals while in Milwaukee and Detroit as well as expenses for Internet access, uniform cleaning, depreciation of tools, and cellular telephone.

Petitioner timely filed a petition.

OPINION

The parties resolved many of the disputed expenses before trial.  We are asked to determine whether petitioner is entitled to deduct the remaining expenses.  We begin by considering

---

[3]Respondent concedes that petitioner is entitled to deduct State and local taxes, real estate taxes, home mortgage interest, certain amounts for tools, union dues, and tax preparation fees. The parties agree that petitioner is entitled to deduct a portion of his personal property taxes and points.

whether petitioner was away from home when he incurred expenses for his vehicle, meals, and lodging in Milwaukee and Detroit.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses.  A taxpayer may deduct reasonable and necessary travel expenses such as vehicle expenses, meals, and lodging incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a).[4]  A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business.  Commissioner v. Flowers, 326 U.S. 465, 470 (1946).  The determination of whether the taxpayer has satisfied these requirements is a question of fact.  Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses.  Kroll v. Commissioner, 49 T.C. 557, 562 (1968).  The duplicate costs are not deductible where the taxpayer maintains two homes for personal reasons.  Sec. 262; Commissioner v. Flowers, supra at 474.

---

[4]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

A taxpayer may deduct the expenses he or she incurred while away from home.  Sec. 162(a)(2).  The word "home" for purposes of section 162(a)(2) has a special meaning.  It generally refers to the area of a taxpayer's principal place of employment, not the taxpayer's personal residence.  Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary.  Id.; Mitchell v. Commissioner, T.C. Memo. 1999-283.  On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite.  Kroll v. Commissioner, supra at 562.

It is presumed that a taxpayer will generally choose to live near his or her place of employment.  Frederick v. United States, 603 F.2d 1292, 1295 (8th Cir. 1979).  A taxpayer must, however, have a principal place of employment and accept temporary work in another location to be away from home.  Kroll v. Commissioner, supra.  A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away.  Deamer v.

Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; Edwards v. Commissioner, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home.  See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home).  The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home.  Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971).  Where a taxpayer has no business connections with the area of primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere.  See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra. In that situation, the expenses incurred while temporarily away from that residence are not deductible.  Hantzis v. Commissioner, supra; Bochner v. Commissioner, supra; Tucker v. Commissioner, supra; see McNeill v. Commissioner, T.C. Memo. 2003-65; Aldea v. Commissioner, T.C. Memo. 2000-136.

Once petitioner was bumped from Minneapolis, he had no job to return to there. His choices were to be laid off and have no work, or to bump other employees and move to different cities to continue working. NWA gave petitioner no end date for his positions in Milwaukee and Detroit. NWA no longer required petitioner to perform any services whatsoever in the Minneapolis area once he was bumped. Although petitioner maintained a residence in the Minneapolis area and returned there occasionally to stay at the residence, this fact alone does not dictate that petitioner's tax home was in Savage, Minnesota, where the residence was located. Unlike traveling salespersons who may be required to return to the home city occasionally between business trips, petitioner's business ties to the Minneapolis area ceased when he was bumped.

The Court understands that the NWA mechanics' lives were unsettled and disrupted. Mechanics did not know how long they would have a job in one specific location. They only knew the system was based on seniority. They could bump less senior employees, and they could be bumped by more senior employees. While we acknowledge that petitioner would have liked to return to the Minneapolis area to work for NWA, petitioner did not know when such a return would be possible due to the seniority system. The likelihood of petitioner's return to a position in Minneapolis depended on NWA's needs for mechanics there as well

as the choices of more senior mechanics.  Petitioner did not know
how long he would be in Milwaukee or Detroit or where he might go
next.  It was not foreseeable that he would be able to return to
Minneapolis at any time due to the seniority system.  Thus, there
was no business reason for petitioner to maintain a home in the
Minneapolis area.  Petitioner kept the residence in the
Minneapolis area for purely personal reasons.  Petitioner has
failed to prove that he had a tax home in 2003.  Accordingly,
petitioner was not away from home in Milwaukee or Detroit, and
the expenses he incurred while there are not deductible.[5]

Substantiation of Expenses

We next turn to the substantiation issues to determine
whether petitioner is entitled to deduct any remaining expenses.
We begin by noting the fundamental principle that the
Commissioner's determinations are generally presumed correct, and
the taxpayer bears the burden of proving that these
determinations are erroneous.[6]  Rule 142(a); INDOPCO, Inc. v.
Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290
U.S. 111 (1933).  Moreover, deductions are a matter of

---

[5]Even if we had found that petitioner's tax home during 2003
was Savage, Minnesota, petitioner may not be treated as
temporarily away from home while he worked in Detroit because the
position lasted over a year.  See sec. 162(a).

[6]Petitioner does not claim the burden of proof shifted to
respondent under sec. 7491(a).  Petitioner also did not establish
he satisfies the requirements of sec. 7491(a)(2).  We therefore
find that the burden of proof remains with petitioner.

legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001; Hradesky v. Commissioner, supra. The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

Unreimbursed Employee Business Expenses

We shall now consider whether petitioner is entitled to deduct the claimed expenses, beginning with the unreimbursed employee business expenses petitioner claimed on Schedule A.

In general, all ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable

year are deductible, but personal, living, or family expenses are not deductible. Secs. 162(a), 262. Services performed by an employee constitute a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). For such expenses, only certain types of documentary evidence will suffice.

Internet Access Expenses

We now examine those expenses not subject to the strict substantiation requirements. Petitioner claimed $210 for Internet access expenses during 2003. We have characterized Internet expenses as utility expenses. Verma v. Commissioner, T.C. Memo. 2001-132. Strict substantiation therefore does not apply, and we may estimate the business portion of utility expenses under the Cohan rule. See Pistoresi v. Commissioner, T.C. Memo. 1999-39.

Petitioner introduced copies of credit card statements indicating that Microsoft charged him a total of $109.75 in 2003. The Microsoft charges were incurred in August through November 2003, months when he was in Milwaukee, Wisconsin, and Detroit, Michigan. Petitioner admitted that he did not have documentation that his employer, NWA, required him to have Internet access. Petitioner testified that he used the Internet to look up information about his health insurance.

Petitioner has not proven that his employer required him to have Internet service or that he used the Internet for his work at NWA. Petitioner is therefore not entitled to deduct any Internet access expenses as employee business expenses for 2003.

Cleaning Expenses for Uniforms

Petitioner claimed $722 for cleaning expenses for his NWA uniforms. Expenses for uniforms are deductible if the uniforms

are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Beckey v. Commissioner, T.C. Memo. 1994-514.

We are satisfied that petitioner incurred deductible expenses for uniform cleaning. Petitioner gave unclear testimony, however, regarding how he calculated the $722 for cleaning costs. Petitioner introduced a document on the letterhead of his CPA that also purports to indicate how the sum was calculated, but it suggests an excessive amount, 22 loads of laundry per month, which was the number of days he estimated he worked each month.

We may estimate the amount of deductible cleaning expenses under the Cohan rule. Petitioner testified that he paid approximately $1.50 per load of laundry. We find that petitioner did approximately eight loads of laundry per month at $1.50 for each wash cycle and for each dry cycle. Petitioner is therefore entitled to deduct $288 of uniform cleaning expenses in 2003.

Depreciation Expenses

Petitioner deducted $1,842 for depreciation of the tools he used at his job at NWA. The costs of tools with useful lives greater than a year are recoverable by depreciation. Secs. 167(a), 168(b); Seawright v. Commissioner, 117 T.C. 294, 305

(2001); Clemons v. Commissioner, T.C. Memo. 1979-273.
Petitioner's testimony that he acquired his tools over the past
15 years and purchased some of them in the first 5 years he
worked at NWA indicates that some tools were approximately 12
years old during the year at issue.

The only documentary evidence petitioner introduced to
support his claimed deduction was a depreciation schedule
indicating that he purchased the tools on January 1, 2001, and
January 1, 2002, contrary to his testimony.  Petitioner
introduced no documentary evidence regarding his tools, such as
receipts, that would show their purchase price or the purchase
date.  Petitioner also did not describe what specific tools he
depreciated nor the tools' expected useful lives.

Petitioner has not substantiated that he is entitled to a
depreciation deduction.  Further, we are unable to estimate any
amount for depreciation under the Cohan rule because the evidence
petitioner introduced is inadequate.  Petitioner is therefore not
entitled to deduct any amount for depreciation.

Cellular Phone Expenses

Petitioner claimed $336 of cellular phone expenses for 2003.
Cellular phones are included in the definition of "listed
property" for purposes of section 274(d)(4) and are thus subject
to the strict substantiation requirements.  Gaylord v.
Commissioner, T.C. Memo. 2003-273.  A taxpayer must establish the

amount of business use and the amount of total use for the property to substantiate the amount of expenses for listed property. Nitschke v. Commissioner, T.C. Memo. 2000-230; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Expenses subject to strict substantiation may not be estimated under the Cohan rule. Sanford v. Commissioner, 50 T.C. at 827.

Petitioner did not prove that NWA required him to have a cellular phone. Petitioner provided an NWA employee telephone listing and copies of his cellular phone bills. The NWA employee telephone listing indicates only that petitioner's cellular phone number was the contact number he gave NWA, not that NWA required him to have a cellular phone. Petitioner also did not offer any evidence indicating how much he used his cellular phone for business use and how much for personal use. Petitioner failed to establish that he incurred any expenses to use his cellular phone for business purposes in addition to those he would have incurred had he used it only for personal purposes. Petitioner is therefore not entitled to deduct any cellular phone expenses for 2003.

Charitable Contributions

We finally consider petitioner's charitable contributions. Petitioner claimed he contributed $225 cash and property worth $924 to charitable organizations in 2003. Charitable

contributions a taxpayer makes are generally deductible under section 170(a). No deduction is allowed, however, for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by a qualified donee organization.[7] Sec. 170(f)(8)(A). The deduction for a contribution of property equals the fair market value of the property on the date contributed. Sec. 1.170A-1(c)(1), Income Tax Regs.

A taxpayer claiming a charitable contribution is generally required to maintain for each contribution a canceled check, a receipt from the donee charitable organization showing the name of the organization and the date and amount of the contribution, or other reliable written records showing the name of the donee and the date and amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs.

We first consider petitioner's cash contributions. Petitioner claimed he donated $225 to his hometown church during 2003. Petitioner provided the name and address of the church and the dates and amounts he contributed in a document he prepared

---

[7]There are now stricter requirements for contributions of money. Sec. 170(f)(17). No deduction for a contribution of money in any amount is allowed unless the donor maintains a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution. Id. This new provision is effective for contributions made in tax years beginning after Aug. 17, 2006. Pension Protection Act of 2006, Pub. L. 109-280, sec. 1217, 120 Stat. 1080.

himself when he prepared his tax returns.  He offered no receipts from the donee organization.[8]  Petitioner stated in the document he offered that he attended the church three times during the year and contributed $75 each time.  We are convinced that petitioner attended the church and donated money, but we do not find the amounts that petitioner claimed to be credible.  We may estimate cash charitable contributions under the Cohan rule.  See Fontanilla v. Commissioner, T.C. Memo. 1999-156.  We conclude that petitioner is entitled to deduct $50 of cash charitable contributions.

We next turn to petitioner's contributions of property.  Petitioner provided a Goodwill/Easter Seals tax deduction statement dated December 24, 2003.  Petitioner testified that he added the dollar value amount to the statement himself.  Petitioner also introduced several pages of a worksheet he completed when preparing his tax return to determine that the value of the property he donated was $924.  Petitioner reported

_____

[8]Petitioner argues on brief that cash charitable contributions of less than $500 do not require a receipt or other substantiation.  Petitioner is incorrect.  All charitable contribution deductions for cash are subject to substantiation.  Sec. 1.170A-13(a)(1), Income Tax Regs.  Moreover, deductions for cash contributions of over $250 are not allowed unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment by the donee organization.  Sec. 170(f)(8).  All contributions of property are also subject to substantiation.  Sec. 1.170A-13(b), Income Tax Regs.  Additional recordkeeping requirements apply to deductions claimed in excess of $500 for contributions of property.  Sec. 1.170A-13(b)(3), Income Tax Regs.

on his tax return that he acquired the donated property on January 1, 2000, for $1,450.

Petitioner introduced no documentation to support the claim on his return that he acquired the property on January 1, 2000. Petitioner also did not introduce evidence that shows the price he paid when he acquired the property. Indeed, petitioner testified that he actually acquired the donated items over time.

Petitioner's documentation regarding the donation of property is also inconsistent with other evidence in the record. For example, petitioner's calendar indicates that he was working in Detroit, Michigan, on December 24, 2003, the day of the purported donation. Petitioner speculated that he may have left Detroit at 4 a.m. that morning, driven approximately 10 hours to Minnesota, and brought the donated property to Goodwill before Goodwill closed on Christmas Eve. We decline to accept petitioner's speculative explanation and find that petitioner has not substantiated that he made charitable contributions of property in 2003, let alone property worth $924. Petitioner is therefore not entitled to deduct any amount for charitable contributions of property.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under Rule 155.