T.C. Summary Opinion 2007-94


UNITED STATES TAX COURT


DARRYL R. AND KRISTI L. STEPHENS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22230-05S.            Filed June 13, 2007.


Darryl R. and Kristi L. Stephens, pro sese.

Kristin Timmons, for respondent.


KROUPA, Judge:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $3,323 deficiency in petitioners' Federal income tax for 2003. After concessions,[2] we are asked to decide two issues. First, we are asked to decide whether petitioner Darryl R. Stephens (Mr. Stephens) was away from home when he worked as an airline mechanic for Northwest Airlines (NWA) in Minnesota to determine whether petitioners are entitled to deduct expenses for his vehicle and meals while he was away from Georgia where he normally lived. We conclude he was not away from home. Second, we are asked to decide whether petitioners substantiated a claimed noncash charitable contribution. We conclude that petitioners have not substantiated the contribution and are therefore not entitled to a noncash charitable contribution deduction.

## Background

Some of the facts have been stipulated and are so found. Petitioners resided in Fayetteville, Georgia, at the time they filed the petition.

## Mr. Stephens' Employment With Northwest Airlines

Mr. Stephens began as an airline mechanic for NWA in 1988. Petitioners moved to Georgia in 2002, and Mr. Stephens continued working for NWA in Georgia.

---

[2]See infra note 3 for the concessions each party made.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise their seniority. Seniority depended on the length of time an employee had worked for NWA regardless of where the airline facility was located. An employee with higher seniority could exercise his or her seniority to bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump.

Mr. Stephens received a bump notice in October 2002. He chose to exercise his seniority and bump another employee rather than accept the layoff. Mr. Stephens was able to bump to Minnesota. He started working in Minnesota on December 17, 2002. He planned to work in Minnesota until he was able to find a new job in Georgia, and he sought other jobs in Georgia with other employers. Mr. Stephens received a job offer in May 2003 from Lockheed Martin to work in Georgia at half the salary he was paid by NWA. Mr. Stephens was unable to accept the offer because Lockheed Martin instituted a hiring freeze, which effectively

revoked the job offer. Mr. Stephens continued to work for NWA in Minnesota for 14 months, until March 2004.

Mr. Stephens' position in Minnesota had no specific end date. After Mr. Stephens was bumped from his position in Georgia, no NWA position was available for him to return to in Georgia. He was forced to bump other employees and work in a different city to stay with NWA. Mr. Stephens expected to return to Georgia as soon as a job became available in Georgia, with NWA or otherwise, that he could obtain. NWA's needs for mechanics in Georgia as well as the choices of the other mechanics also subject to the seniority system would influence the timing of Mr. Stephens' return to an NWA position in Georgia.

Mrs. Stephens and petitioners' family members remained in Georgia at the family residence while Mr. Stephens worked in Minnesota. Mr. Stephens lived with his parents in Otsego, Minnesota, while he worked in Minnesota. Mr. Stephens returned to Georgia occasionally to visit his family.

Petitioners claimed they contributed some items to charity in 2003.

Petitioners' Return

Petitioners claimed deductions for certain expenses on Schedule A, Itemized Deductions, on the joint return for 2003. Respondent examined the return for 2003 and issued petitioners a deficiency notice in which he disallowed many of the expense

deductions.  Of the expenses still in dispute,[3] petitioners claimed they were entitled to deduct unreimbursed employee expenses related to Mr. Stephens' NWA mechanic job.  The unreimbursed employee business expenses petitioners claimed include $6,413 of vehicle expenses and $2,501 of meals incurred while Mr. Stephens worked in Minnesota.  Petitioners also claimed that they were entitled to a $1,413 charitable contribution deduction.  Petitioners reported on the return that they donated personal property to the Salvation Army in Minneapolis, Minnesota.  Petitioners produced a receipt at trial, however, that shows a contribution of items to The Clothes Less Traveled Thrift Shop, Inc., a charity in Peachtree City, Georgia, valued at the same amount as the charitable contribution deduction they claimed on the return.

Petitioners timely filed a petition.

### Discussion

The parties resolved many of the disputed expenses before trial.  We are asked to determine whether petitioners are entitled to deduct the remaining expenses.  We begin by

---

[3]Respondent concedes that petitioners are entitled to deduct the State and local income taxes, real estate taxes, personal property taxes, home mortgage interest, points, safety shoes, union dues, and a portion of certain amounts for tools claimed on the return for 2003.  Petitioners concede the deductions claimed for cash contributions, a cellular phone, uniform maintenance, depreciation, and a portion of the amount for tools.

considering whether Mr. Stephens was away from home when he incurred expenses for his vehicle and meals in Minnesota.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as vehicle, meals, and lodging expenses incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a). A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The duplicate costs are not deductible where the taxpayer maintains two homes for personal reasons. Sec. 262; Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while away from home. Sec. 162(a)(2). The word "home" for purposes of section 162(a)(2) has a special meaning. It generally refers to

the area of a taxpayer's principal place of employment, not the taxpayer's personal residence. Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary. Id.; Mitchell v. Commissioner, T.C. Memo. 1999-283. On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite. Kroll v. Commissioner, supra at 562.

It is presumed that a taxpayer will generally choose to live near his or her place of employment. Frederick v. United States, 603 F.2d 1292, 1295 (8th Cir. 1979). A taxpayer must, however, have a principal place of employment and accept temporary work in another location to be away from home. Kroll v. Commissioner, supra. A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away. Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; Edwards v. Commissioner, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home.  See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home).  The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home.  Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971).  Where a taxpayer has no business connections with the primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere.  See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra.  In that situation, the expenses incurred while temporarily away from that residence are not deductible.  Hantzis v. Commissioner, supra; Bochner v. Commissioner, supra; Tucker v. Commissioner, supra; see McNeill v. Commissioner, T.C. Memo. 2003-65; Aldea v. Commissioner, T.C. Memo. 2000-136.

Once Mr. Stephens was bumped from Georgia, he had no job to return to there.  His choices were to be laid off and have no work, or to bump another employee and move to a different city to

continue working.  NWA gave Mr. Stephens no end date for his position in Minnesota.  NWA no longer required Mr. Stephens to perform any services whatsoever in Georgia once he was bumped.  Mr. Stephens introduced evidence that he searched for work in Georgia and actually accepted a position at Lockheed Martin that ultimately was not available due to a hiring freeze.  Although Mrs. Stephens and the family remained in Georgia with occasional visits from Mr. Stephens while he worked in Minnesota, this fact alone does not dictate that Mr. Stephens' tax home was in Georgia, where the family residence was located.  Unlike traveling salespersons who may be required to return to the home city occasionally between business trips, Mr. Stephens' business ties to Georgia ceased when he was bumped.

The Court understands that the NWA mechanics' lives were unsettled and disrupted.  Mechanics did not know how long they would have a job in one specific location.  They only knew the system was based on seniority.  They could bump less senior employees, and they could be bumped by more senior employees.  While we acknowledge that Mr. Stephens would have liked to return to Georgia, Mr. Stephens did not know when such a return would be possible due to the NWA seniority system and the Georgia job market.  The likelihood of Mr. Stephens' return to an NWA position in Georgia depended on NWA's needs for mechanics there as well as the choices of more senior mechanics.  Mr. Stephens

did not know how long he would be in Minnesota or where he might go next. It was not foreseeable that he would be able to return to Georgia at any time due to the seniority system and the job market. Thus we conclude there was no business reason for petitioners to maintain a home in Georgia. Petitioners kept the family residence in Georgia for purely personal reasons. Petitioners have failed to prove that Mr. Stephens had a tax home in 2003. Accordingly, Mr. Stephens was not away from home when he worked as an NWA mechanic in Minnesota, and the expenses he incurred while there are not deductible.[4]

Noncash Charitable Contributions

We next turn to whether petitioners are entitled to a noncash charitable contribution deduction of $1,413. We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous.[5] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and the

---

[4]Even if we had found that Mr. Stephens' tax home during 2003 was in Georgia, Mr. Stephens may not be treated as temporarily away from home while he worked in Minnesota because the position lasted over a year. See sec. 162(a).

[5]Petitioners do not claim the burden of proof shifts to respondent under sec. 7491(a). Petitioners also did not establish they satisfy the requirements of sec. 7491(a)(2). We therefore find that the burden of proof remains with petitioners.

taxpayer has the burden to prove he or she is entitled to any deduction claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001; Hradesky v. Commissioner, supra. The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

Charitable contributions a taxpayer makes are generally deductible under section 170(a). No deduction is allowed, however, for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by a qualified donee

organization.[6]  Sec. 170(f)(8)(A).  The deduction for a
contribution of property equals the fair market value of the
property on the date contributed.  Sec. 1.170A-1(c)(1), Income
Tax Regs.

A taxpayer claiming a charitable contribution deduction is
generally required to maintain for each contribution a canceled
check, a receipt from the donee charitable organization showing
the name of the organization and the date and amount of the
contribution, or other reliable written records showing the name
of the donee and the date and amount of the contribution.  Sec.
1.170A-13(a)(1), Income Tax Regs.

Petitioners assert they are entitled to a charitable
contribution deduction.  Petitioners reported on the return for
2003 that they acquired personal property on January 1, 1920,[7]
for $2,000, which they donated to the Salvation Army in
Minneapolis, Minnesota.  At trial, however, petitioners provided

---

[6]There are now stricter requirements for contributions of
money.  Sec. 170(f)(17).  No deduction for a contribution of
money in any amount is allowed unless the donor maintains a bank
record or written communication from the donee showing the name
of the donee organization, the date of the contribution, and the
amount of the contribution.  Id.  This new provision is effective
for contributions made in tax years beginning after Aug. 17,
2006.  Pension Protection Act of 2006, Pub. L. 109-280, sec.
1217, 120 Stat. 1080.

[7]We assume petitioners made an error on Form 8283, Noncash
Charitable Contributions, when they claimed that they acquired
the property they donated on Jan. 1, 1920, a date before
petitioners were born.

a copy of a receipt from The Clothes Less Traveled Thrift Shop, Inc., a charity in Peachtree City, Georgia, for a donation valued at the same amount as the charitable contribution deduction they claimed on the return. Petitioners' documentation regarding the donation of property is inconsistent with the position petitioners took on the return because it lists a different charity. Petitioners offered no explanation for this inconsistency.

Mr. Stephens testified that his wife added the dollar value amount to the statement. Petitioners also introduced several pages of a worksheet they completed to determine that the value of the property they donated was $1,413. Petitioners introduced no documentation to establish the original purchase price of the property. We find that petitioners have failed to substantiate and are therefore not entitled to deduct any amount of the claimed charitable contribution.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under Rule 155.