T.C. Memo. 2007-153

UNITED STATES TAX COURT

SEAN M. AND JULIE M. RILEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21124-05.                    Filed June 14, 2007.

Sean M. and Julie M. Riley, pro sese.

<u>Blaine Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $3,570 deficiency in petitioners' Federal income tax for 2003.  After concessions,[1] we are asked to decide two issues.  First, we are asked to decide whether petitioner Sean M. Riley (Mr. Riley) was away from home

_____

[1]See <u>infra</u> note 4 for the concessions of each party.

when he worked as an airline mechanic for Northwest Airlines (NWA) in Newark to determine whether petitioners are entitled to deduct expenses for his vehicle, meals, and lodging while Mr. Riley was away from Prescott, Wisconsin, in the Minneapolis area where he normally lived. We conclude that Mr. Riley was not away from home. Second, we are asked to decide whether petitioners substantiated various other expenses. We conclude that petitioners have substantiated and are entitled to deduct some of these other expenses.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Prescott, Wisconsin, at the time they filed the petition.

Mr. Riley's Employment With Northwest Airlines

Mr. Riley began as an airline mechanic for NWA in 1992 and worked through at least 2004.[3] Mr. Riley worked in Minneapolis from 1992 through April 2003.

NWA sent layoff notices to some of its employees when it experienced financial difficulties. The employees receiving the notices could either choose to accept the layoff or exercise

---

[2]All section references are to the Internal Revenue Code in effect for 2003, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[3]There is nothing in the record to indicate whether Mr. Riley has continued to work for NWA after his 14-month job in Newark ended in 2004.

their seniority. Seniority depended on the length of time an employee had worked for NWA, regardless of where the airline facility was located. An employee with higher seniority could bump an employee with less seniority and take that employee's position. The employee with less seniority could then take the layoff or find another employee with less seniority to bump. This seniority bumping arrangement was in place across the country, so that an NWA mechanic looking to keep his or her job at NWA had to look at several different cities to find a less senior employee to bump.

Mr. Riley received a bump notice in April 2003. Mr. Riley chose to exercise his seniority and bump another employee rather than accept the layoff. Mr. Riley was able to bump to Newark, New Jersey. He started working in Newark in May 2003. Mr. Riley worked in Newark for 14 months, until July 2004 when he quit the Newark job.

Mr. Riley's position in Newark had no specific end date. After he was bumped from his position in Minneapolis, no NWA position was available for him to return to in Minneapolis. Mr. Riley was forced to bump other employees and work in a different city to stay with NWA. NWA's needs for mechanics in Minneapolis as well as the choices of other mechanics also subject to the seniority system would influence the timing of Mr. Riley's return to an NWA position in Minneapolis.

Mr. Riley maintained his Wisconsin residence throughout 2003, although he worked in Newark for 8 months of the year. Mr. Riley returned to Wisconsin and stayed at his residence with his family for 2 nights every week during the 8 months in 2003 that he worked in Newark. Mr. Riley had Internet access at his Wisconsin residence from October 4 through the end of 2003.

Mr. Riley purchased a Dell desktop computer, monitor, and printer (computer) after starting work for NWA in Newark. The computer remained in petitioners' Wisconsin residence. The computer was used for personal purposes. NWA did not require Mr. Riley to perform work for his Newark job on the computer.

Mr. Riley used some of his own tools in his work for NWA. Mr. Riley did not produce any receipts showing what tools he owned, when he purchased the tools, and how much he paid for the tools. Mr. Riley testified that he purchased safety glasses for $80 and safety shoes for $102. Mr. Riley did not provide any receipts or other documents showing he purchased these items. Mr. Riley also had a cellular phone. His cellular phone number was the personal contact number he gave NWA.

Mr. Riley wore a uniform while he worked for NWA. He estimated that he worked on average 22 days per month. Mr. Riley also wore a jacket while working that occasionally needed to be drycleaned.

Petitioners' Return

Petitioners claimed deductions for certain expenses on Schedule A, Itemized Deductions, on their joint return for 2003. Respondent examined petitioners' return for 2003 and issued petitioners a deficiency notice in which he disallowed many of the expense deductions. Of the expenses still in dispute,[4] petitioners assert they are entitled to deduct unreimbursed employee expenses related to Mr. Riley's NWA mechanic job. The unreimbursed employee business expenses petitioners claimed include $5,596 of vehicle expenses, $38 of travel expenses, and $3,162 of meals[5] while Mr. Riley worked in Newark. The unreimbursed employee business expenses also include the following non-travel related expenses: $296 for depreciation of tools, $75 of Internet expenses, $960 of cellular telephone expenses, $1,106 of equipment expenses, $80 for safety glasses, $102 for safety shoes, and $822 for maintenance of uniforms.

---

[4]Respondent concedes that petitioners are entitled to deduct State and local income taxes, real estate taxes, home mortgage interest, gifts to charity, tax preparation fees and a portion of the union dues claimed on the return for 2003. Petitioners concede the deductions claimed for miscellaneous supplies, costs of tools, investment fees, IRA fees, and $4 of the $708 union dues.

[5]The gross amount of meals expenses petitioners claimed on the return is $4,864. Petitioners multiplied the meals expenses by 65 percent, the applicable percentage allowable only for employees subject to Department of Transportation hours of service limits (DOT percentage). Sec. 274(n)(3). We need not decide whether petitioners are entitled to use the DOT percentage as Mr. Riley was not away from home.

Petitioners timely filed a petition.

OPINION

The parties resolved many of the disputed expense deductions before trial. We are asked to determine whether petitioners are entitled to deduct the remaining expenses. We begin by considering whether Mr. Riley was away from home when he incurred expenses for his vehicle, meals, and lodging in Newark.

Travel Expenses While Away From Home

We begin by briefly outlining the rules for deducting travel expenses. A taxpayer may deduct reasonable and necessary travel expenses such as vehicle, meals, and lodging expenses incurred while away from home in the pursuit of a trade or business. Secs. 162(a)(2), 262(a). A taxpayer must show that he or she was away from home when he or she incurred the expense, that the expense is reasonable and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The determination of whether the taxpayer has satisfied these requirements is a question of fact. Id.

The purpose of the deduction for expenses incurred away from home is to alleviate the burden on the taxpayer whose business needs require him or her to maintain two homes and therefore incur duplicate living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). The duplicate costs are not deductible where

the taxpayer maintains two homes for personal reasons.  Sec. 262; Commissioner v. Flowers, supra at 474.

A taxpayer may deduct the expenses he or she incurred while away from home.  Sec. 162(a)(2).  The word "home" for purposes of section 162(a)(2) has a special meaning.  It generally refers to the area of a taxpayer's principal place of employment, not the taxpayer's personal residence.  Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, supra at 561-562.

There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  The taxpayer's tax home may be the taxpayer's personal residence if the taxpayer's employment away from home is temporary.  Id.; Mitchell v. Commissioner, T.C. Memo. 1999-283.  On the other hand, the exception does not apply and the taxpayer's tax home remains the principal place of employment if the employment away from home is indefinite.  Kroll v. Commissioner, supra at 562.  A taxpayer is not temporarily away from home during any period of employment if the employment lasts longer than a year.  Sec. 162(a).

It is presumed that a taxpayer will generally choose to live near his or her place of employment.  Frederick v. United States, 603 F.2d 1292, 1295 (8th Cir. 1979).  A taxpayer must, however, have a principal place of employment and accept temporary work in

another location to be away from home.  Kroll v. Commissioner, supra.  A person who has no principal place of business nor a place he or she resides permanently is an itinerant and has no tax home from which he or she can be away.  Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), affg. T.C. Memo. 1984-63; Edwards v. Commissioner, T.C. Memo. 1987-396.

All the facts and circumstances are considered in determining whether a taxpayer has a tax home.  See Rev. Rul. 73-529, 1973-2 C.B. 37 (describing objective factors the Commissioner considers in determining whether a taxpayer has a tax home).  The taxpayer must generally have some business justification to maintain the first residence, beyond purely personal reasons, to be entitled to deduct expenses incurred while temporarily away from that home.  Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981); Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Tucker v. Commissioner, 55 T.C. 783, 787 (1971).  Where a taxpayer has no business connections with the primary residence, there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere.  See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Deamer v. Commissioner, supra; Hantzis v. Commissioner, supra.  In that situation, the expenses incurred while temporarily away from that residence are not deductible.  Hantzis v. Commissioner, supra;

Bochner v. Commissioner, supra; Tucker v. Commissioner, supra; see McNeill v. Commissioner, T.C. Memo. 2003-65; Aldea v. Commissioner, T.C. Memo. 2000-136.

Once Mr. Riley was bumped from Minneapolis, he had no job to return to there. His choices were to be laid off and have no work, or to bump other employees and move to a different city to continue working. NWA gave Mr. Riley no end date for his position in Newark. NWA no longer required Mr. Riley to perform any services whatsoever in Minneapolis once he was bumped. Although Mrs. Riley remained in the family residence in the Minneapolis area with visits from Mr. Riley while he worked in Newark, this fact alone does not dictate that Mr. Riley's tax home was in Prescott, Wisconsin, where the family residence was located. Unlike traveling salespersons who may be required to return to the home city occasionally between business trips, Mr. Riley's business ties to Minneapolis ceased when he was bumped.

The Court understands that the NWA mechanics' lives were unsettled and disrupted. Mechanics did not know how long they would have a job in one specific location. They only knew the system was based on seniority. They could bump less senior employees, and they could be bumped by more senior employees. While we acknowledge that Mr. Riley would have liked to return to the Minneapolis area, Mr. Riley did not know when such a return would be possible due to the NWA seniority system. The

likelihood of Mr. Riley's return to a NWA position in Minneapolis depended on NWA's needs for mechanics there as well as the choices of more senior mechanics. Mr. Riley did not know how long he would be in Newark or where he might go next. It was not foreseeable that he would be able to return to Minneapolis at any time due to the seniority system. Thus we conclude there was no business reason for petitioners to maintain a home in the Minneapolis area. Petitioners kept the family residence in the Minneapolis area for purely personal reasons. Petitioners have failed to prove that Mr. Riley had a tax home in 2003. Accordingly, Mr. Riley was not away from home in Newark, and the expenses he incurred while there are not deductible.[6]

Substantiation of Expenses

We next turn to the substantiation issues to determine whether petitioners are entitled to deduct the remaining expenses. We begin by noting the fundamental principle that the Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous.[7] Rule 142(a); INDOPCO, Inc. v.

---

[6]Even if we had found that Mr. Riley's tax home during 2003 was Prescott, Wisconsin, Mr. Riley may not be treated as temporarily away from home while he worked in Newark because the position lasted over a year. See sec. 162(a).

[7]Petitioners do not claim the burden of proof shifts to respondent under sec. 7491(a). Petitioners also did not establish they satisfy the requirements of sec. 7491(a)(2). We
(continued...)

<u>Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer has the burden to prove he or she is entitled to any deduction claimed. Rule 142(a); <u>Deputy v. du Pont</u>, 308 U.S. 488, 493 (1940); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934); <u>Welch v. Helvering</u>, <u>supra</u>. This includes the burden of substantiation. <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001; <u>Hradesky v. Commissioner</u>, <u>supra</u>. The taxpayer shall keep such permanent records or books of account as are sufficient to establish the amounts of deductions claimed on the return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. <u>Beam v. Commissioner</u>, T.C. Memo. 1990-304 (citing <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

---

[7](...continued)
therefore find that the burden of proof remains with petitioners.

Unreimbursed Employee Business Expenses

We shall now consider whether petitioners are entitled to deduct the unreimbursed employee business expenses they claimed on Schedule A. In general, all ordinary and necessary expenses paid or incurred in carrying on a trade or business during the taxable year are deductible, but personal, living, or family expenses are not deductible. Secs. 162(a), 262. Services performed by an employee constitute a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); sec. 1.162-17(a), Income Tax Regs.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the deduction, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For the Cohan rule to apply, however, a basis must exist on which this Court can make an approximation. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827

(1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). For such expenses, only certain types of documentary evidence will suffice.

Internet Access Expenses

We now examine those expenses not subject to the strict substantiation requirements. Petitioners claimed $75 for Internet access expenses during 2003. We have previously characterized Internet expenses as utility expenses. Verma v. Commissioner, T.C. Memo. 2001-132. Strict substantiation therefore does not apply, and we may estimate the business portion of utility expenses under the Cohan rule. See Pistoresi v. Commissioner, T.C. Memo. 1999-39.

Petitioners introduced a copy of an invoice showing they paid PressEnter, L.L.P., $107 for Internet access from October 4, 2003, to April 4, 2004, of which $52 was for Internet access during 2003. Mr. Riley testified that the $23 difference between the amount claimed on the return for Internet access and the amount shown on the PressEnter receipt is attributable to the purchase price of software that had to be installed on petitioners' computer to make the computer Internet accessible. The PressEnter charges were incurred during the time Mr. Riley worked in Newark while the computer was in Wisconsin. In addition, Mr. Riley failed to introduce documentation showing

that his employer, NWA, required him to have Internet access while he worked in Newark.

Petitioners have not proven that Mr. Riley's employer required him to have Internet access for his work at NWA or that he used the computer for his work at NWA. Petitioners are therefore not entitled to deduct their Internet access expenses as employee business expenses for 2003.

Safety Glasses and Safety Shoes Expenses

Petitioners claimed $80 for safety glasses and $102 for safety shoes for 2003. A taxpayer is entitled to deduct unreimbursed employee expenses only to the extent that the taxpayer demonstrates that he or she could not have been reimbursed for such expenses by his or her employer. Sec. 162(a); Podems v. Commissioner, 24 T.C. 21, 23 (1955).

Petitioners did not provide any documentation showing that Mr. Riley purchased safety glasses or safety shoes in 2003. Moreover, the parties introduced the NWA airline mechanics' union contract (union contract), which contradicts petitioners' claimed deductions for safety glasses and safety shoes expenses. The union contract shows that NWA provided its mechanics with safety glasses and safety shoes. Alternatively, NWA would reimburse employees up to $90 for each of the safety glasses and the safety shoes if the employee chose to buy his or her own. Even if petitioners had shown that Mr. Riley had purchased safety glasses

and safety shoes in 2003, petitioners have failed to demonstrate that Mr. Riley was not, and could not have been, reimbursed for such expenses by NWA. See Podems v. Commissioner, supra at 23. Petitioners are therefore not entitled to a deduction for safety glasses or safety shoes as employee business expenses for 2003.

Cleaning Expenses for Uniforms

Petitioners claimed $822 for cleaning expenses for Mr. Riley's NWA uniforms. Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Beckey v. Commissioner, T.C. Memo. 1994-514.

We are satisfied that petitioners incurred deductible expenses during 2003 for cleaning uniforms. Petitioners introduced the portion of the NWA flight technician's agreement requiring Mr. Riley to wear a uniform. Mr. Riley worked 22 days per month on average during 2003. Mr. Riley gave unclear testimony, however, on how he calculated the $822 for cleaning costs. Petitioners introduced a document on the letterhead of their CPA that also purports to indicate how the sum was calculated, but it suggests an excessive amount. The document alleges that Mr. Riley separately washed his uniform shirt and pants 22 times per month at $1.50 for each wash cycle and each

dry cycle and drycleaned his uniform jacket six times per month at $6 per drycleaning.

We may estimate the amount of these expenses under the Cohan rule. We adopt the unit cost of $1.50 listed on petitioners' exhibit as the cost to wash or dry one load of laundry. We find that approximately eight loads of laundry for each of the months Mr. Riley worked is a reasonable number to yield 22 clean shirts and pants and a jacket per month. Petitioners are therefore entitled to deduct $288 of uniform cleaning expenses during 2003.

Depreciation Expenses

Petitioners deducted $296 for depreciation of the tools Mr. Riley used at his job at NWA. The cost of tools with useful lives greater than a year is recoverable by depreciation. Secs. 167(a), 168(b); Seawright v. Commissioner, 117 T.C. 294, 305 (2001); Clemons v. Commissioner, T.C. Memo. 1979-273. Mr. Riley testified that he acquired his tools on January 1, 2001.

Mr. Riley admitted he had no receipts and that the $2,000 reported was his estimate of the replacement costs. The only documentary evidence petitioners introduced to support their claimed deduction were two lists of minimum tools for mechanics required by NWA. Petitioners failed to introduce any documentary evidence to show their purchase price or the purchase date. Mr. Riley also did not describe what specific tools he depreciated nor the tools' expected useful lives.

Petitioners have not substantiated that they are entitled to a depreciation deduction.  Further, we are unable to estimate any amount for depreciation under the Cohan rule because the evidence petitioners introduced is inadequate.  Petitioners are therefore not entitled to deduct any amount for depreciation.

Expenses Subject to Strict Substantiation Requirements

We now consider those expenses that are subject to the additional strict substantiation requirements under section 274(d).  Expenses subject to strict substantiation may not be estimated under the Cohan rule.  Sanford v. Commissioner, 50 T.C. at 827.

Cellular Phone Expenses

Petitioners claimed $960 of cellular phone expenses for 2003.  Cellular phones are included in the definition of "listed property" for purposes of section 274(d)(4) and are thus subject to the strict substantiation requirements.  Gaylord v. Commissioner, T.C. Memo. 2003-273.  A taxpayer must establish the amount of business use and the amount of total use for the property to substantiate the amount of expenses for listed property.  Nitschke v. Commissioner, T.C. Memo. 2000-230; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Petitioners provided copies of their cellular phone bills, but they failed to establish that they incurred any expenses to

use Mr. Riley's cellular phone for business purposes in addition to those they would have incurred had he used it only for personal purposes. Moreover, petitioners did not prove that NWA required Mr. Riley to have a cellular phone. Petitioners are therefore not entitled to deduct any cellular phone expenses as employee business expenses for 2003.

Equipment Expenses

Petitioners claimed $1,106 of equipment expenses for the purchase of a computer. Computers and peripheral equipment are "listed property" and are therefore subject to the strict substantiation requirements. Sec. 280F(d)(4)(A)(iv).

Petitioners introduced a $1,069 receipt from Dell for a computer they ordered in August 2003, after Mr. Riley had been in Newark for 3 months.[8] Petitioners have not proven that Mr. Riley's employer required him to purchase and use the computer for his work at NWA. Moreover, the computer remained in the Wisconsin residence while Mr. Riley was working in Newark. We find that the evidence petitioners introduced on this issue does not satisfy the strict substantiation requirements. Accordingly, petitioners are not entitled to deduct any of the equipment costs for the computer.

---

[8]Petitioners introduced no evidence to explain the $37 difference between the amount of equipment expenses they claimed and the amount shown on the receipt from Dell.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.